LAWRENCE E. MOONEY, J.
 

 In this lost-chance-of-survival action, plaintiff Betty Downey appeals the judgment of the trial court entered upon a jury verdict in her favor, but awarding no damages. Mrs. Downey claims the trial court erred in entering its judgment because the verdict was inconsistent, was not supported by the evidence, and was grossly inadequate. Because we hold the verdict was inconsistent, we reverse and remand.
 

 Factual Background
 

 Mrs. Downey brought this action after her husband, Patrick Downey, died of lung cancer. Mr. Downey’s primary-care physician was Dr. Brinkman, an internist and cardiologist, and one of the defendants in this action. Mr. Downey entered the hospital in December of 1996 for heart-bypass surgery, to be performed by Dr. High-bloom, also a defendant in this action. Two chest x-rays were taken during this hospitalization. The x-rays were interpreted as showing a lesion in Mr. Dow-ney’s left lung. Specifically, the first x-ray was interpreted by a radiologist as showing a “1.5 cm nodular density at the left base which is, perhaps, minimally enlarged from prior studies. Neoplasm cannot be completely excluded. If clinically warranted, CT scanning could be performed.” The second x-ray was interpreted as showing a “persistent nodular density adjacent to the left heart border and malignancy cannot be excluded.” No further tests or evaluations were ordered in response to these reports.
 

 Mr. Downey first learned of the abnormality on his chest x-rays in the fall of 1998, during a visit to Dr. Brinkman’s office. Mr. Downey was then referred to a lung specialist and, after further evaluation, the lesion was diagnosed as cancerous. As experts testified to at trial, the cancerous lesion was likely at an early
 
 *327
 
 stage — stage I or stage II — in December of 1996. And, had the cancer been detected and treated in late 1996 or early 1997, Mr. Downey would have had a 50 to 75% chance of survival. At the time Mr. Dow-ney’s cancer was diagnosed in November of 1998, the cancer had progressed to a more advanced stage — stage IV — and had metastasized to Mr. Downey’s spine. By this time, Mr. Downey had a 1% chance of survival; the cancer was virtually incurable. Mr. Downey died of lung cancer nine months later, in August of 1999.
 

 Mrs. Downey brought an action against Dr. Brinkman, University Internists of St. Louis, Inc. (Dr. Brinkman’s employer), and Dr. Highbloom for lost chance of survival.
 
 [1]
 
 Mrs. Downey alleged the defendants failed to inform her husband of the results of the December 1996 x-rays and failed to order any further testing in response to those chest x-rays. Mrs. Downey alleged these failures fell below defendants’ standard of care and caused her husband to lose a material chance of survival.
 

 A verdict-director submitted in regards to plaintiffs claim against defendants Dr. Brinkman and University Internists read as follows:
 
 [2]
 

 Your verdict must be for plaintiff Betty Downey and against defendant University Internists of St. Louis, Inc. and defendant Robert Brinkman, M.D. if you believe:
 

 First, Robert Brinkman, MD either
 

 Failed to inform Patrick Downey of the results of the chest x-ray reports generated during the 12/96 hospitalization, or
 

 Failed to do timely follow up testing in response to the results of the chest x-ray reports generated during the 12/96 hospitalization, and
 

 Second, Patrick Downey then had a material chance of survival, and,
 

 Third, defendant Robert Brinkman, MD, in any one or more of the respects submitted in Paragraph First, was thereby negligent,
 

 and,
 

 Fourth, such negligence directly caused or directly contributed to cause Patrick Downey to lose all or a material part of such chance of survival.
 

 The jury was also instructed as follows:
 

 If you find in favor of plaintiff Betty Downey, then you must determine the total amount that you believe will fairly and justly value any damages Patrick Downey sustained before death with the absence of recovery directly caused or directly contributed to cause, and any damages Betty Downey sustained after the death and is reasonably certain to sustain in the future which the death of Patrick Downey directly caused or directly contributed to cause. You must state such total amount in your verdict, and you must itemize that total amount by the categories of damages set forth in the verdict form.
 

 In your verdict, you must also state, as a percentage, the chance of survival that you find Patrick Downey lost. In determining the total amount of damages, you must not reduce such damages by the percentage you assess as the lost chance of survival. The judge will compute the final award by multiplying the total amount you find as damages by the
 
 *328
 
 percentage you assess as the lost chance of survival.
 

 You must not consider grief or bereavement suffered by reasons of the death.
 

 The jury returned a verdict in favor of Mrs. Downey and against University Internists and Dr. Brinkman.
 
 [3]
 
 The jury assessed damages in all categories at zero dollars,
 
 [4]
 
 and found that there was no percentage of a chance of survival lost. The court did not accept this verdict, finding it inconsistent. The court further instructed the jury that the court could not accept the verdict as written, that the verdict was inconsistent, and that the jury should examine its verdict in light of all the instructions.
 
 [5]
 

 After further deliberations, the jury returned with a verdict. The jury again found in favor of Mrs. Downey on her claim against defendants University Internists and Dr. Brinkman. And, the jury again assessed all damages at zero dollars. This time, however, the jury found that Patrick Downey lost a 5% chance of survival. Plaintiffs attorney again requested that the jury be sent back because of an inconsistent verdict, arguing it was inconsistent to find the loss of a 5% chance of survival and then to award no damages. Finding the verdict consistent because the jury had found some percentage chance of survival lost, the court denied plaintiffs request and accepted the verdict. Plaintiff now appeals.
 

 Discussion
 

 We are confronted with a jury verdict finding for a plaintiff but assessing no damages. There are two lines of authorities in cases such as this, wherein recovery for an unliquidated amount is sought. One line of cases, which includes the federal courts and some state jurisdictions, considers such a verdict as a verdict for the defendant and enters judgment accordingly.
 
 See Haley v. Byers Transp. Co.,
 
 394 S.W.2d 412, 416 (Mo.1965);
 
 Porter v. Mallet,
 
 596 S.W.2d 451, 452 (Mo.App. E.D.1980). The other line of cases holds that the verdict is inconsistent and self-contradictory, and therefore cannot stand.
 
 Porter,
 
 596 S.W.2d at 452;
 
 Boone v. Richardson,
 
 388 S.W.2d 68, 76 (Mo.App.1965)(overruled on other grounds). As recognized by this Court, Missouri appellate courts have generally treated a verdict that finds a defendant negligent but awards no damages as inconsistent and invalid.
 
 White v. Otten,
 
 810 S.W.2d 704, 705 (Mo.App. E.D.1991);
 
 see also Boone,
 
 388 S.W.2d at 76;
 
 Porter,
 
 596 S.W.2d at 453. Our Supreme Court has recognized the existence of these two lines of cases, but has not resolved the split of authority.
 
 Haley,
 
 394 S.W.2d at 416,
 
 White,
 
 810 S.W.2d at 705.
 

 Jury verdicts are inconsistent when they are so contradictory that they cannot be construed with certainty or when they cannot fairly be resolved as a definite finding in favor of either party.
 
 Franklin v. Allstate Ins. Co.,
 
 985 S.W.2d 893, 896 (Mo.App. W.D.1999). It is true we should consider a verdict in light of the entire record to see if we can ascertain the jury’s intent.
 
 White,
 
 810 S.W.2d at 705. And, it is also true that we should construe the verdict liberally so that it may be given
 
 *329
 
 effect where possible.
 
 Id.
 
 However, even following these guiding principles, we are unable to give effect to the verdict in this case. Here, a jury found that Patrick Downey had a material chance of surviving his cancer and that his chance of survival was lost due to Dr. Brinkman’s negligence. But it awarded no damages. The jury’s award of no damages whatsoever starkly contradicts its finding of the issues for the plaintiff and that Mr. Downey had suffered harm — the loss of a material chance of survival. A patient
 
 does
 
 suffer a harm when a doctor fails to diagnose or adequately treat a disease.
 
 Wollen v. DePaul Health Center,
 
 828 S.W.2d 681, 684 (Mo. banc 1992). The harm suffered is the loss of the chance of recovery.
 
 Id.
 
 Thus, logically, an award of damages must follow from a finding of liability to compensate for the harm the patient has suffered. To allow an award of no damages when a patient has lost a material chance of survival is to value his life at nothing.
 

 The
 
 form
 
 of the instructions cannot save the defendants from the necessary inconsistency of the verdict in this case. Defendants argue that the verdict in this case is consistent because a finding of damage is not a required or essential element of the lost-ehance-of-survival verdict-director, nor does the word “damages” appear in the instructions, as it would be in a negligence verdict-director. They argue that because damages are considered by the jury independently of the “loss of chance” verdict-director, the jury was free to find damages were not warranted, even after rendering a plaintiffs verdict. We are unpersuaded. The last finding of the verdict-director does constitute a finding of “damages.” In order to find for plaintiff, the verdict-director required the jury to believe that the defendants’ “negligence directly caused or directly contributed to cause Patrick Dow-ney to lose all or a material part of such chance of survival.” And, our Supreme Court held in
 
 Wollen
 
 that a plaintiff who has lost a material chance of survival has necessarily suffered harm. We find no meaningful distinction between harm suffered and damage sustained.
 

 Equally unavailing is the defendants’ argument that this verdict is not inconsistent because of evidence of Mr. Downey’s “co-morbidities.” Mr. Downey did have multiple health conditions, including coronary artery disease, congestive heart failure, diabetes, hypertension, hyperlipidemia (high cholesterol), and a moderate to moderately severe ejection fraction (a measure of heart pump function). He had a history of a heart attack and two heart-bypass surgeries. Defendants argue that the jury could have concluded that, because Mr. Downey suffered from these multiple illnesses, he did not suffer damages from the loss of chance of surviving the cancer because he died, or would have died, from these other conditions.
 

 But here, Patrick Downey died from the cancer the defendants negligently failed to diagnose, not some other ailment. Further, there was no evidence that these other ailments would have necessarily taken his life. All experts agreed that Mr. Downey’s health conditions would reduce his life expectancy, but no one testified as to how much Mr. Downey’s life expectancy would have been reduced. A defense expert opined that in 1996, Patrick had a 30% chance of dying from his heart condition in three years — or by December of 1999. Yet, Mr. Downey lived until August of 1999, just four months shy of this three-year mark. And, the evidence showed that Mr. Downey had done well, and with regards to his heart, had become symptom-free after his heart-bypass surgery in 1996. Further, there was testimony that
 
 *330
 
 Mr. Downey’s other health conditions had not compromised him by the time of his death from cancer. It is true that a jury is free to believe or disbelieve the evidence presented. But, in the absence of evidence that Mr. Downey died, or would have died, from these other conditions in August of 1999, his other ailments cannot explain an award of no damages. Even if those other ailments did shorten Mr. Dow-ney’s life expectancy, they might operate to reduce his damages, but not to eliminate damages entirely.
 

 In summary, a jury found that Patrick Downey had a material chance of surviving his cancer and that his chance of survival was lost due to Dr. Brinkman’s negligence. But it awarded no damages to compensate for the harm suffered. This verdict is inconsistent, and therefore it will not support the entry of any judgment.
 
 [6]
 

 Boone,
 
 388 S.W.2d at 76-77. Accordingly, we reverse and remand the cause for a new trial on all issues.
 

 WILLIAM H. CRANDALL, JR., J., concurs.
 

 CLIFFORD H. AHRENS, P.J., concurs in result.
 

 [1]
 

 . Mrs. Downey brought the action individually and as plaintiff ad litem. Mrs. Downey also brought a wrongful-death action against the defendants, but this claim was not submitted to the jury.
 

 [2]
 

 . This verdict-director was based on MAI 21.08; the same verdict-director was submitted in regards to plaintiff’s claim against defendant Dr. Highbloom.
 

 [3]
 

 .The jury found in favor of defendant Dr. Highbloom on plaintiff’s claim for lost chance of survival against defendant Highbloom. Plaintiff does not appeal the judgment in favor of Dr. Highbloom.
 

 [4]
 

 . Those categories are (1) past economic, including past medical; (2)past non-economic; and (3) future non-economic.
 

 [5]
 

 . The jury was instructed in accordance with MAI 2.06: Explanatory — Inconsistent or Erroneous Verdict.
 

 [6]
 

 . Because we find this verdict inconsistent, we do not address plaintiff's remaining points on appeal.