James E. LEWEY, Plaintiff–Appellant,

v.

Larry L. FARMER, Defendant–Respondent.

No. SD 31388.

Missouri Court of Appeals, Southern District, Division One.

March 1, 2012.

Matthew J. Devoti, Casey & Devoti, P.C., of St. Louis, MO, for Appellant.

Deborah Bell Yates, Zimmer & Associates, of St. Louis, MO, for Respondent.

GARY W. LYNCH, Judge.

James E. Lewey ("Plaintiff") appeals the trial court's judgment in his favor on a jury verdict awarding him $15,000 in damages for injuries resulting from a motor-vehicle collision caused by the undisputed negligence of Larry L. Farmer ("Defendant"). Plaintiff contends that the trial court erred in permitting Defendant to inquire about Plaintiff's prior low-back injury and treatment, in refusing a jury instruction directing the jury not to consider evidence of that low-back injury, and in denying Plaintiff's motion for a new trial or, in the alternative, additur, because the jury award was "grossly inadequate and failed to adequately compensate [Plaintiff] for the damages he suffered." Finding no merit in these contentions, we affirm.

### Factual and Procedural Background

Plaintiff and Defendant were involved in a motor-vehicle collision in March 2007 ("the accident"). It occurred when Defendant ran a red light, proceeded into an intersection, and struck the vehicle driven by Plaintiff. Defendant did not dispute that his negligence caused the accident. Plaintiff filed a petition alleging permanent injury to his head, neck, mid back, and upper back, along with mental anguish and severe pain. Plaintiff also alleged these injuries resulted in reasonable and necessary medical and hospital-care expenses, reductions in earnings from employment, permanent impairment of his ability to work, and permanent impairment of his ability to "enjoy the ordinary pursuits of life."

Plaintiff was fifty-nine years old at the time of the accident and, at that time, operated three building and construction-

related businesses. A couple of hours after the accident, Plaintiff reported feeling pain in his mid back and sought chiropractic treatment from Dr. Jack Kessinger. For several months following the accident, Plaintiff continued to visit Dr. Jack Kessinger, as well as his son, Dr. Jay Kessinger, and reported muscle spasms, neck pain, headaches, and continued upper- and mid-back pain. Plaintiff also visited other medical-service providers during this time for treatment of the same conditions.

Before trial, Plaintiff filed a motion to determine the value of medical treatment and presented affidavits from medical-service providers assessing the reasonable value of the services they individually provided to Plaintiff. The aggregate total of these services was $33,231.97. Defendant did not object to this valuation of the medical services but did state, "I want it on the record that that does not preclude me from arguing as to the necessity of the medical treatment that was performed after the accident being for reasons having to do with the accident." The trial court responded, "Absolutely." The sole issue before the jury was the total measure of damages suffered by Plaintiff.

Plaintiff had sustained a low-back injury in 1974. Surgery on Plaintiff's back was performed at that time. In 2001, Plaintiff began chiropractic treatments for low-back pain with Dr. Jack Kessinger and thereafter received numerous chiropractic treatments for his low-back pain from both Drs. Kessinger, including a treatment two weeks before the accident. Before trial, Plaintiff filed a motion to exclude evidence of his prior low-back injury and treatment for that injury, which was denied by the trial court.

At trial, Plaintiff's case consisted of his own testimony, the testimony of one of his treating chiropractors, Dr. Jay Kessinger, and the deposition of Dr. Thomas Musich.

All three witnesses were questioned by defense counsel, over objection by Plaintiff, about Plaintiff's prior low-back injury. Defendant's case consisted of his own testimony and the testimony of Dr. Lehmann, who had examined Plaintiff after the accident. Dr. Lehmann also testified, over objection, about Plaintiff's prior low-back injury. During the instruction conference, Plaintiff submitted Instruction A to the trial court, which purported to withdraw from the jury's consideration all evidence of Plaintiff's prior low-back injury. The trial court rejected this instruction.

At the conclusion of the trial, the jury returned a verdict for Plaintiff in the amount of $15,000. Plaintiff moved for a new trial or, in the alternative, additur. The trial court denied that motion and entered judgment in accordance with the jury's verdict. Plaintiff timely appealed.

### Discussion

### Point I—No Abuse of Discretion in Permitting Defendant to Inquire about Plaintiff's Prior Low–Back Injury

Plaintiff claims in his first point that the trial court erred in permitting counsel for Defendant to question Plaintiff, Dr. Jay Kessinger, Dr. Musich, and Dr. Lehmann about Plaintiff's prior low-back injury and subsequent treatment for that injury. Plaintiff argues the elicited testimony was irrelevant and served only to unduly confuse the jury.

■ This Court reviews trial court rulings on the admissibility of evidence for abuse of discretion. *Howard v. City of Kansas City*, 332 S.W.3d 772, 785 (Mo. banc 2011). The ruling of a trial court is reviewable only if it is clearly against the logic of the circumstances, unreasonable, arbitrary, and demonstrates a lack of thoughtful, deliberate consideration. *Id.* at 785–86. If the trial court's ruling is

correct on any tenable basis, there is no abuse of discretion. *Boswell v. American Ins. Co.*, 835 S.W.2d 454, 460 (Mo.App. 1992).

■ In support of his point, Plaintiff focuses almost exclusively on the "narrowly tailored" allegations in his petition, which allege injury only to Plaintiff's neck, upper back, and mid back. He argues that because he did not plead any injury to his low back, any evidence about his low back was irrelevant. Plaintiff's reliance on his petition is misplaced, however, because it ignores that Plaintiff put his low back at issue at trial during his own direct examination before Defendant elicited any testimony about it.

■ When a party opens up a matter at trial, that party may not object to the matter's further development by the opposing party. *Yaeger v. Olympic Marine Co.*, 983 S.W.2d 173, 187 (Mo.App.1998) (citing *State ex rel. Mo. Hwy. & Transp. Comm'n v. Matula*, 910 S.W.2d 355, 362 (Mo.App.1995)). Evidence that might otherwise be inadmissible cannot be excluded if the objecting party first introduces such evidence. *Union Elec. Co. v. Metro. St. Louis Sewer Dist.*, 258 S.W.3d 48, 57 (Mo. banc 2008). Thus, "even if evidence was inadmissible and subsequent argument was improper[,]" a determination we need not address and do not make here, a party who first opens the door to an issue or evidence may not complain. *Yaeger*, 983 S.W.2d at 187 (citing *Matula*, 910 S.W.2d at 362).

In *Yaeger*, the Court addressed, in part, whether evidence of a plaintiff's drinking habits and prior alcohol treatment were properly presented to the jury at trial when the plaintiff was injured during a boat collision. 983 S.W.2d at 175. Following the collision of the two boats, plaintiff was injured when he fell down the wheelhouse stairs of his employer's boat. *Id.*

The Court determined that the evidence was properly presented because the plaintiff elicited testimony about his drinking habits. *Id.* at 187. Specifically, the plaintiff's doctor testified during direct examination by the plaintiff that "[plaintiff] 'was drinking approximately eight beers per day.' " *Id.* Because the plaintiff opened the door to this issue, the *Yaeger* court denied the plaintiff's claim of error on appeal. *Id.*

Here, Plaintiff opened the door to evidence concerning his prior low-back injury during his own direct examination. Plaintiff's petition alleged damages as a result of permanent impairment of his ability to regularly work and enjoy the ordinary pursuits of life. On direct examination, Plaintiff described the extent of these damages and testified that he was forced to shutter his three construction-related businesses because of the pain he suffered following the accident. Plaintiff testified that his injuries were so severe and permanent that he could no longer even manage the sixty-mile round-trip drive from his home in Rolla to work sites in Fort Leonard Wood. Specifically, Plaintiff was asked, "Can you describe for the jury if you had any—if there was any consequence, any result from that—that 60–mile round trip?" Plaintiff responded, "Couldn't hardly walk when I got there." When counsel asked Plaintiff why he could not walk, Plaintiff stated, "*Back pain, leg pain.*" (Emphasis added). Plaintiff also stated, "When you've got pressure on the back of your—*underneath the knees,* you're pulling on the *sciatic nerve* . . . that pulls on the *sciatic nerve,* and that really causes a lot of pain." (Emphasis added). Later on direct examination, Plaintiff testified that as a result of the injuries suffered as a result of the accident, he could no longer "do things [he] used to do." Specifically, Plaintiff testified that he could no

longer shoot a compound bow and arrow and now had to use a cross bow. When asked why he could no longer shoot a compound bow and arrow, Plaintiff answered, "When you hold a compound bow out here and you're drawing 60 or 70 pounds and that, you're using *all your back muscles* to do that.... *All those muscles* are working back there." (Emphasis added).

Plaintiff's testimony about back pain, leg pain, pain from pressure underneath his knees, pain from pulling on his sciatic nerve, and the use of all the muscles in his back was not "narrowly tailored" and did not limit discussion to merely his neck, upper back, and mid back, as pleaded in his petition. Leg pain is not neck, upper back, or mid-back pain. Neither is pain from pressure underneath the knees. Most importantly, however, the sciatic nerve, which Plaintiff complained about being pulled upon when walking thereby causing a lot of pain, is located in the low back. *See, e.g., Crawford v. Chicago–Kansas City Freight Line, Inc.,* 443 S.W.2d 161, 163 (Mo.1969) (noting a plaintiff's pain in his left leg and sciatic nerve was related to the low back); *Davies v. Carter Carburetor, Div. ACF Indus., Inc.,* 429 S.W.2d 738, 743 (Mo.1968) (noting a doctor's findings of low back pain and pain in the sciatic nerve); *Rosenberg v. Terminal RR Ass'n of St. Louis,* 159 S.W.2d 633, 636 (Mo.1941) (noting a diagnosis of " 'chronic lumbar sacral or *low back strain* ' " when a plaintiff complained of back pain and pain walking, which required Novocain injections into the sciatic nerve) (emphasis added); *see also* Merriam–Webster Collegiate Dictionary, Eleventh Edition 1112 (2005) (defining "sciatic nerve" as "either of the pair of largest nerves in the body that arise one on each side from the nerve plexus supplying the posterior limb and pelvic region and that pass out of the pelvis and down the back of the thigh").

Because Plaintiff testified about leg pain, pain from pulling on the sciatic-nerve while walking, pressure underneath his knees, and limitations on the use of all the muscles in his back, Plaintiff opened the door for Defendant's examination of him and other witnesses regarding his prior injury to his low back. In this context, we cannot say that the trial court's admission of this challenged testimony is clearly against the logic of the circumstances, unreasonable, arbitrary, or demonstrates a lack of thoughtful, deliberate consideration. Finding no abuse of discretion in admitting this evidence on this basis, we need not address whether it was admissible on any other basis or not. Plaintiff's first point is denied.

### Point II—No Abuse of Discretion in Refusing Instruction A

Plaintiff's second point on appeal is that the trial court erred in declining to submit a withdrawal instruction, Instruction A, to the jury. Instruction A reads, "The evidence of the plaintiff's injury to his low back and treatment therefor is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

 The decision to grant or refuse a withdrawal instruction is left to the discretion of the trial court. *Soper v. Bopp,* 990 S.W.2d 147, 157–58 (Mo.App.1999). This Court reviews such decisions only for abuse of discretion because " 'absent an abuse of such discretion, refusal to give a withdrawal instruction constitutes no basis for complaint.' " *Id.* (quoting *Parker v. Pine,* 617 S.W.2d 536, 542 (Mo.App.1981)).

 Plaintiff alleges that because evidence of Plaintiff's prior low-back injury and evidence of treatments received for that injury should have been excluded by the trial court, the court abused its discretion in declining to submit Instruction A to

the jury. The trial court, however, committed no abuse of discretion in admitting the evidence because Plaintiff had already opened the door to the issue, as previously discussed in response to Plaintiff's first point, *supra*. Therefore, the trial court did not abuse its discretion in refusing to give Instruction A. Plaintiff's second point is denied.

### Point III—No Abuse of Discretion in Denying Motion for New Trial or Additur

Plaintiff's third point on appeal is that the trial court abused its discretion in denying his motion for new trial or, in the alternative, additur because the jury verdict was inadequate.

Determining the measure of damages is chiefly a jury's decision. *Tomlin v. Guempel*, 54.S.W.3d 658, 660 (Mo. App.2001). Because determining damages requires evaluating the credibility of witnesses and assessing the weight given to their testimony, damage determinations are primarily within the jury's discretion. *Kenniston v. McCarthy*, 858 S.W.2d 268, 271 (Mo.App.1993) (citing *Summers v. Fuller*, 729 S.W.2d 32, 34 (Mo.App.1987)). Similarly, juries are free to accept as true or reject as false any testimony offered at trial. *Schroeder v. Lester E. Cox Med. Ctr., Inc.*, 833 S.W.2d 411, 414 (Mo.App. 1992) (citing *Georgescu v. K Mart Corp.*, 813 S.W.2d 298, 299 (Mo. banc 1991)). Juries may also choose to believe or disbelieve a plaintiff's testimony of pain experienced and damages suffered. *Summers*, 729 S.W.2d at 34. This Court does not review which witnesses the jury should believe, nor does this Court review the weight that should be given to the testimony of witnesses. *Kirst v. Clarkson Constr. Co.*, 395 S.W.2d 487, 491 (Mo.App.1965).

A jury's verdict, however, may be amplified through additur if the court determines a new trial is warranted and the defendant consents to enlarging the judgment. *Tucci v. Moore*, 875 S.W.2d 115, 116 (Mo. banc 1994). Denial of a new trial based on an inadequacy in the jury verdict is reviewed for abuse of discretion. *Tomlin*, 54 S.W.3d at 660. Abuse of discretion occurs only when the jury verdict is "'shockingly inadequate as to indicate that it is a result of passion and prejudice or a gross abuse of its discretion.'" *Id.* (quoting *Leasure v. State Farm Mut. Auto. Ins. Co.*, 757 S.W.2d 638, 640 (Mo. App.1988)). There is no abuse of discretion if reasonable minds could disagree about the propriety of the trial court's decision. *Burrows v. Union Pac. R.R. Co.*, 218 S.W.3d 527, 534 (Mo.App.2007) (citing *Kehr v. Knapp*, 136 S.W.3d 118, 122–23 (Mo.App.2004)).

Here, Plaintiff testified he had received numerous chiropractic treatments for his low back before the accident with Defendant. The most recent of these treatments had occurred just two weeks before the accident. Although one of Plaintiff's treating chiropractors, Dr. Jay Kessinger, admitted that Plaintiff had never been released from treatment for his low-back injury before the accident, that Plaintiff had complained of low-back pain after the accident, and that Plaintiff had received treatment for his entire spine after the accident, Plaintiff testified that he had received no chiropractic treatments for his low back and had suffered no low-back pain after the accident. The jury was free to believe or disbelieve this claim by Plaintiff. If the jury did not believe Plaintiff's claim, as it appears from the verdict that they did not, then Plaintiff was not entitled to recover any medical expenses after the accident for treatment of his low back.

The medical testimony offered by Plaintiff and Defendant during the trial also conflicted as to the extent of the injuries suffered by Plaintiff as a result of the accident. Plaintiff alleged and testified that he suffered permanent injury and could no longer work or enjoy certain hobbies. Plaintiff's witness, Dr. Jay Kessinger, likewise supported Plaintiff's claim of permanent injury. Defendant's witness, Dr. Lehmann, on the other hand, testified that the injuries suffered by Plaintiff as a result of the accident were temporary. Dr. Lehmann testified that Plaintiff would have recovered from his injuries after a maximum of four months. The jury was free to decide which witnesses to believe, which parts of their respective testimonies to believe, and to determine the weight given to each of those testimonies. While, arguably, Plaintiff's and Dr. Kessinger's testimony *may* have supported a larger jury verdict, Dr. Lehmann's testimony arguably supported the smaller verdict awarded by the jury.

Based upon the evidence before it, the jury's verdict was not shockingly inadequate so as to indicate that it is a result of passion and prejudice or a gross abuse of its discretion. In that light, the trial court did not abuse its discretion in denying Plaintiff's motion for new trial. In the absence of a right to a new trial, additur is not available. *Tucci*, 875 S.W.2d at 116. Plaintiff's third point is denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.