

# In the
# Missouri Court of Appeals
# Western District

STEVEN WALKER,

                Appellant,

v.

FAITH KELLEY,

                Respondent.

WD79217

OPINION FILED:

OCTOBER 18, 2016

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Marco Roldan, Judge**

**Before Division One: Anthony Rex Gabbert, P.J., Thomas H. Newton, and Alok Ahuja, JJ.**

Steven Walker appeals from a judgment entered upon a jury verdict finding in his favor on his negligence claim against Faith Kelley and awarding him $1.00 in damages. He contends on appeal that the circuit court erred in denying his motion for new trial, arguing that the jury's verdict of $1.00 was grossly inadequate because his medical expenses were $11,279.62 and the jury's award of only $1.00 was a result of jury bias, prejudice, or other misconduct. We affirm.

On December 21, 2009, Faith Kelley was driving her stepmother's 1989 Chevrolet Corsica. At approximately 4:30 in the afternoon, while traveling northbound on River Boulevard in a residential neighborhood in Independence, Kelley failed to recognize that Walker had stopped for traffic and hit him from behind. Kelley testified that she was going twenty to

twenty-five miles per hour just before the impact of the accident. She did not have time to apply her brakes before she hit the rear of Walker's vehicle.

Walker testified that, just prior to the accident he was stopped for a vehicle ahead of him that was making a left turn. There was no advance warning of the collision, and the impact was of such force that Walker's head was thrown back and broke out the cab window of his pickup truck.

Walker was transported from the scene of the accident by ambulance and received treatment at Centerpoint Emergency Department. His initial complaints included head, neck, and back pain. A computed tomography (CT) scan of his neck showed no fractures and mild arthritis. He was released the same day. He received follow-up care from his primary care physician, Dr. Mouse. Mouse referred Walker to Dr. Curtis Johnson, a physiatrist with a specialty in anesthesiology and pain medicine. Walker's first visit with Johnson occurred on January 6, 2010, approximately two weeks following the accident. At that time, Walker complained of a very stiff neck and problems with moving his head in any direction. Walker also reported headaches, floaters in his eyes, ringing in his ears, sensitivity to bright lights, low back pain and numbness, cramping in his right leg, and numbness in his left foot. Johnson believed Walker's complaints to be due to the injuries received in the December 21, 2009, accident.

Johnson ordered an MRI of Walker's neck. Johnson noted that Walker had been taking Vicodin and Flexiril, narcotic pain medications prescribed by the emergency room doctors. Johnson performed a physical exam and concluded that Walker was experiencing neck pain caused by the motor vehicle accident and that he had degenerative disc disease of the lumbar spine causing left-sided lumbar radiculitis. Johnson did not believe that Walker's degenerative disc disease was caused by the motor vehicle accident. However, he did believe that the new

2

onset of lumbar radiculitis was from the accident. Johnson considered Walker's biggest concern to be his neck and provided a cervical epidural shot for treatment on January 6, 2010.

Following the initial cervical epidural shot, Walker returned for a follow-up visit on January 20, 2010. Walker described feeling a 20% improvement from the shot. On his second visit, Johnson reviewed the MRI previously ordered and noted a bulging disc at C5-6. This was not present in an MRI conducted at Centerpoint on the date of the accident. Johnson testified that the first MRI film showing no broad based disk bulging appeared to be a correct report of Walker's condition the day of the accident. Johnson testified that there was no way of knowing whether the motor accident caused the bulging C5-6 disks. Johnson gave Walker another epidural injection in his neck. On February 3, 2010, Johnson gave Walker a third and final epidural injection and enrolled Walker in therapy. Johnson focused on Walker's complaints regarding his neck and did not treat him for his back. Johnson did not see Walker again for nearly five years when he was re-evaluated on September 23, 2015, prior to Johnson giving his deposition in this case. Johnson was unaware of any intervening medical history Walker may have had between the final 2010 visit and the 2015 visit.

On the September 23, 2015, visit, Walker reported to Johnson that he was still having neck pain with some radiation into his left shoulder. Walker had not received any treatment other than physical therapy since his last visit with Johnson in 2010. Walker told Johnson that he was experiencing stiffness at the base of his neck and upper back and was using ibuprofen (Motrin) for pain relief as needed. Johnson performed a physical examination and noted Walker to be tender in the left cervical area with decreased range of motion. Johnson concluded that Walker was experiencing chronic neck pain from the 2009 automobile accident. Because five years had passed since the accident, Johnson believed the neck pain had become permanent. Johnson

3

suggested additional treatment including a change of medication from Motrin to Meloxicam and cervical facet injections. These injections were designed to pinpoint the facet joints that may have become arthritic with the goal of decreasing pain and improving range of motion. Johnson did not consider Walker to be a surgical candidate for his neck pain. His final diagnosis was chronic neck pain from the automobile accident.

When Johnson was asked at trial why five years elapsed between the 2010 visit with Walker and the 2015 visit, Johnson testified that he believed that Walker wanted to be evaluated for his upcoming case. Johnson testified that he was unaware of other treatment Johnson may have received so he was unable able to testify that any other treatment that Walker received was reasonable and necessary.

Walker testified at the trial. He testified that he had a work injury to his lower back in 1993 that took approximately three years to heal. Prior to and after the motor vehicle accident he visited the chiropractor periodically. Walker was working for Dependable Hauling doing physical labor the day of the accident. Walker claimed that he missed work for a period of time following the collision with Kelley but had no verification of wage loss from his employer. He admitted that he ultimately went back to work and resumed his former duties. Walker testified that, after working for Dependable Hauling he worked for a "temp company" doing a variety of jobs in 2010 and 2011. He went to work for Volt doing physical labor including sweeping and shoveling and he testified that there was nothing at Volt that he could not do physically. After working for Volt, Walker worked for Pro Logistics running a forklift, picking and pulling orders, stocking, warehousing, and sweeping the floor. He testified that he had no trouble doing that work. Walker then took a job in construction repurposing an existing office building and an indoor soccer facility. Following that he went to the Kansas City Power and Light boot camp for

4

apprentice lineman and performed very physical work while there. Thereafter he worked for Foutch Construction and Shotts Construction where he performed hard physical labor. Finally, Walker obtained a job at KCPL as an apprentice lineman. This work requires digging six to eight foot holes in the ground with posthole diggers, hauling equipment, and climbing poles to put equipment on the poles. Walker testified that there is no activity he could do before the accident that he cannot do now.

The jury initially returned a verdict for Walker but awarded no damages. The circuit court rejected the verdict on the grounds that it was inconsistent according to the law and the jury was instructed to be guided by the damages instruction which provided that "[i]f you find in favor of Plaintiff, then you must award Plaintiff such sum as you believe would fairly and justly compensate Plaintiff for any damages you believe Plaintiff sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence." The jury deliberated further and returned with a damage award of $1.00. On October 28, 2015, the court entered Judgment on the verdict and Walker filed his motion for new trial on November 2, 2015. On November 17, 2015, the court overruled Walker's motion for new trial. This appeal follows.

"Denial of a new trial based on an inadequacy in the jury verdict is reviewed for abuse of discretion." *Lewey v. Farmer*, 362 S.W.3d 429, 435 (Mo. App. 2012). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008). "There is no abuse of discretion if reasonable minds could disagree about the propriety of the trial court's decision." *Lewey*, 362 S.W.3d at 435. Abuse of discretion with regard to an

5

inadequate jury verdict occurs only when the jury verdict is so shockingly inadequate as to indicate that it is a result of passion and prejudice or a gross abuse of its discretion. *Id.*

In Walker's sole point on appeal he claims that the circuit court erred in denying his motion for new trial, arguing that the jury's verdict of $1.00 was grossly inadequate in that Walker's medical expenses were $11,279.62 and the jury's award of only $1.00 was a result of jury bias, prejudice, or other misconduct. Walker argues that the court's rejection of the jury's $0.00 verdict but acceptance of the jury's $1.00 verdict was against the weight of the evidence because, even if the jury chose not to award compensation for pain, suffering, or disability, the jury should have at least awarded the undisputed medical expenses Walker incurred from the accident. We find no abuse of discretion.

First, we may only consider Walker's claim that the $1.00 award demonstrates juror bias, prejudice, passion, or misconduct and in so doing we consider only the evidence which supports the trial court's ruling denying the motion for new trial. *Rains v. Herrell*, 950 S.W.2d 585, 588-589 (Mo. App. 1997). We will not review Walker's argument that the verdict was against the weight of the evidence.

> As explained in *Homeyer v. Wyandotte Chemical Corp.*, 421 S.W.2d 306 (Mo. 1967): In a tort action the determination of the amount to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the credibility of witnesses and the weight and value to be given their testimony on a fact issue. The trial court has wide discretion in ruling on a motion for new trial which alleges that the damages awarded are inadequate since that court may take into consideration the credibility of the witnesses and may weigh the evidence. The appellate court, however, may not pass on the weight of the evidence in reviewing the action of the trial court.

*Id.* (internal citations omitted); see also *Lewey v. Farmer*, 362 S.W.3d 429, 435 (Mo. App. 2012).

Second, we consider the verdict in light of the entire record so as to better ascertain the jury's intent, and construe the verdict liberally so that it may be given effect where possible.

*Downey v. University Internists of St. Louis, Inc.*, 154 S.W.3d 339, 342-343 (Mo. App. 2004). There are two lines of authority in cases where unliquidated damages are sought and a jury finds for a plaintiff but assesses no damages. *Id.* at 342. "Our Supreme Court has recognized the existence of these two lines of cases, but has not resolved the split of authority." *Id.* One line of cases, which includes the federal courts and some state jurisdictions, enters judgment in favor of the defendant by considering the award of zero monetary damages as a verdict for the defendant. *Id.* The other line of cases, which includes Missouri appellate courts, finds the verdict inconsistent and invalid. *Id.* Consequently, we find trial court error where the court does not call the defect to the jury's attention and return the matter to the jury for further deliberations to correct the verdict or to render a new one. *Jenkins v. Revolution Helicopter Corp., Inc.*, 925 S.W.2d 939, 943 (Mo. App. 1996).

Here, the trial court recognized the initial $0.00 verdict as being inconsistent with a verdict in favor of Walker on his negligence claim and returned the matter to the jury for further deliberations. In so doing, the court again advised the jury, via the damages instruction, to "award Plaintiff such sum as you believe would fairly and justly compensate Plaintiff for any damages you believe Plaintiff sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence." The jury returned from deliberations with a damages award of $1.00.

Walker argues that the $1.00 award is tantamount to a $0.00 award and, therefore, the award is inconsistent and "the jury's prejudice can be inferred from the inadequacy of this verdict." He contends that, at the very least, the evidence showed that he required reasonable and necessary medical treatment following the motor vehicle accident in the form of ambulance and emergency room services and that "[a]ny reasonable and rational approach to the assessment

7

of damages would require an award of at least the undisputed medical expenses." In light of the record before us, we cannot agree.

With regard to damages, Walker suggested to the jury in closing that a $100,000 verdict would be appropriate. He argued that he was not claiming a bulging disk or herniated disc due to the accident, he was claiming "cervicalgia, a fancy medical word that means that he has chronic neck pain" from the accident. To prove his medical expenses, Walker entered Plaintiff's Exhibit 9 into evidence during his testimony. Exhibit 9 lists six different providers of services, includes a column labeled "AMOUNT INCURRED" with a TOTAL sum of $25,895.97, and a column labeled "AMOUNT NECESSARY TO SATISFY PLAINTIFF'S OBLIGATION FOR MEDICAL" with a TOTAL sum of $11,279.62.

During deliberations the jury asked the court to see all of the evidence and asked how the medical bills were satisfied. The court responded by sending the jury all exhibits and indicated that, with regard to the medical bills, the jury was to be guided by the evidence and the instructions. After further deliberations, the jury then asked the court if it could "find for the plaintiff and not award money." The court discussed with counsel that such would result in an inconsistent verdict and, therefore, the jury needed to be properly instructed to avoid this result. In consultation with counsel, the court responded that the jury was to be guided by Instruction Number 6 which stated that, if the jury found for the plaintiff, it must award the plaintiff such sum as the jury believed would fairly and justly compensate for any damages sustained and reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence. The jury found in favor of Walker and assessed damages at $0.00. The jury was instructed that its verdict was inconsistent under the law and was required to deliberate further

and to be guided by Instruction Number 6.  The jury returned with a verdict in favor of Walker and assessed damages at $1.00.  The court accepted the jury's verdict.

"The size of the jury's award alone does not establish that it resulted from bias or passion.  Rather, the party claiming the inadequacy of a verdict must demonstrate that some trial error or misconduct of the prevailing party was responsible for prejudicing the jury."  *Tomlin v. Guempel*, 54 S.W.3d 658, 660 (Mo. App. 2001).  Walker fails to do so here.  Contrary to Walker's suggestion on appeal, the jury was not bound to return a damages verdict for at least the amount reflected in Plaintiff's Exhibit 9 for the "amount necessary to satisfy plaintiff's obligation" for ambulance and emergency room services.  Although Walker characterizes Plaintiff's Exhibit 9 as "undisputed medical services" representing a stipulation with regard to the minimal amount of recovery he was entitled to if the jury found Kelley negligent, the record suggests otherwise.  While Plaintiff's Exhibit 9 is titled "Stipulation of Plaintiff and Defendant," it appears from the record that the only "stipulation" between the parties represented in Plaintiff's Exhibit 9 was with regard to how medical expenses would be entered into evidence and presented at trial to the jury.

Pursuant to Section 490.715, RSMo Cum. Supp. 2015, the value of medical treatment rendered, as admissible at trial, is the amount necessary to satisfy the financial obligation to healthcare providers.  The amount of medical bills actually incurred is not automatically admissible.  *Deck v. Teasley*, 322 S.W.3d 536, 539 (Mo. banc 2010).  However, Section 490.715 allows a party to rebut the presumption that the value of medical treatment rendered is only the amount necessary to satisfy the financial obligation by moving the court to hear additional evidence on the matter, including evidence regarding the actual medical bills incurred.  *Id.*  If the presumption is rebutted, the fact-finder receives the issue free from any presumption and

9

considers all of the evidence offered, including the facts that gave rise to the presumption as well as the facts to the contrary. *Id.* at 540. "If the presumption is not rebutted, then the only evidence of the value of medical treatment rendered is the dollar amount necessary to satisfy the financial obligation to the health care providers." *Id.*

Here, it appears that, in lieu of only submitting the amount necessary to satisfy Walker's obligations for medical expenses pursuant to Section 490.715 or attempting to rebut Section 490.715's presumption by presenting additional evidence to the trial judge, Plaintiff's Exhibit 9 was an agreement reached by the parties with regard to how the value of medical treatment rendered would be presented to the jury. Plaintiff's Exhibit 9 was submitted to the jury showing the amount necessary to satisfy the financial obligation to health care providers *as well as* actual medical expenses incurred.

While Plaintiff's Exhibit 9 was entered into evidence without objection with an indication that the parties had stipulated to the exhibit, we find nothing in the record to suggest that Kelley ever stipulated to responsibility for a given amount of damages if found negligent by the jury. Kelley argued at trial that, although she did collide with Walker's vehicle, "the complaints that [Walker] has now are not reasonably related to what he says happened to him on December 21st." Kelley further argued that, during the five years after the accident, Walker made only ten chiropractor visits, had three visits to a pain management specialist and some physical therapy, and had no lost wages due to the accident. Kelley argued that Walker never stopped engaging in strenuous work-related activities after the accident and continues to engage in such activities.

In addition, Kelley was permitted – without objection – to present evidence, and to argue to the jury, that Walker's medical bills had been paid, and that the jury should not award damages for those bills, because of the fact of payment. In opening statement, Kelley's counsel stated

10

without objection, "The emergency medical care and treatment seemed to be necessary and appropriate, but that emergency medical care and treatment as I've indicated to you is an expense that's been incurred and resolved." On cross-examination, Kelley's counsel asked Walker about Exhibit 9: "And those amounts have been paid, haven't they?" to which Walker agreed. Tr. 86. Based on that testimony, Kelley was able to argue in closing, again without objection, that the jury should not award Walker his medical costs, because they were "satisfied by payment of $11,279.62":

> The plaintiff offered you an exhibit that showed the total charges or expenses for his injuries is $25,895.97. ***The same exhibit shows those charges were satisfied by payment of $11,279.62.***
>
> ***So I would submit to you that considering those damages would not be the proper thing to do in terms of evaluating what the damages are in this case*** if, in fact, you believe that damages are merited by the claims that you have heard and are substantially related to the evidence that you've heard.

Tr. 121 (emphasis added). Because Walker did not object to this evidence and argument, or challenge it on appeal, we need not decide whether it was proper. Nevertheless, given this evidence and argument, the jury was told that it could refuse to award Walker the medical costs he had incurred, because those costs had been "paid," "satisfied by payment," and "resolved."

We also find nothing in the record to suggest that the jury's damages award of $1.00 was the result of jury bias, prejudice, or other misconduct. The record is clear that the jury considered medical expenses prior to returning its verdict; the jury made a specific inquiry with regard to how medical expenses had been satisfied. The jury was instructed after returning a $0.00 damages award that it must award fair and reasonable compensation due to finding that Kelley's negligence caused damage to Walker. We presume that the jury followed this

11

instruction.  *Rider v.The Young Men's Christian Association of Greater Kansas City*, 460 S.W.3d 378, 393 (Mo. App. 2015).  Consequently, the jury's ultimate award of $1.00 evinces that the jury either found damages negligible, or found that Walker had already been fairly and reasonably compensated for the damage Kelley caused Walker.  Liberally construing the verdict in light of the entire record, either of these conclusions was plausible.

We conclude, therefore, that the circuit court did not abuse its discretion in denying Walker's motion for new trial as Walker has failed to prove that the jury's award was grossly inadequate or that the $1.00 damages award was a result of jury bias, prejudice, or other misconduct.  We affirm the circuit court's judgment.


_____
Anthony Rex Gabbert, Judge


All concur.