

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-12-2004

# Diehl v. Blaw Knox

Precedential or Non-Precedential: Precedential

Docket No. 02-3151P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Diehl v. Blaw Knox" (2004). *2004 Decisions.* Paper 890.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/890

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

Case No: 02-3151

_____

TIMOTHY DIEHL; ROSE DIEHL,

Appellants

v.

BLAW-KNOX, a/k/a, d/b/a, t/a Blaw-Knox,
a division of Ingersoll Rand Corporation;
INGERSOLL-RAND CORPORATION;
INGERSOLL-RAND
COMPANY, Construction and Mining;
COOPER
INDUSTRIES, INC.; FUNK
MANUFACTURING COMPANY,
a/k/a, d/b/a, t/a Funk Manufacturing;
DEERE & CO,
a/k/a, d/b/a, t/a John Deere Corporation

On Appeal From The United States
District Court
For The Middle District of Pennsylvania
(Civ. A. No. 01-CV-00770)

District Judge:  The Honorable James F.
McClure, Jr.

_____

Argued January 9, 2004

_____

Before: BARRY, SMITH, Circuit
Judges, and POLLAK,[*] District Judge.

(Opinion Filed:  March 12, 2004)

David J. Selingo [Argued]
311 Market Street
Kingston, PA 18074
Counsel for Appellants

James W. Gicking [Argued]
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut Street
16th Floor
Philadelphia, PA 19103

Counsel for Appellee

_____

OPINION
_____

SMITH, Circuit Judge

This products liability case, arising under the law of Pennsylvania, presents a question of admissibility under Federal Rule of Evidence 407 of remedial measures offered by a plaintiff to establish that a product is defective.  Timothy Diehl was severely injured when his legs became

_____

* The Honorable Louis H. Pollak, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

trapped under the rear wheels of a machine manufactured by Blaw-Knox. Mr. Diehl and his wife sued Blaw-Knox,[1] alleging that the machine was defective because (1) its rear wheels were not enclosed, (2) it lacked a back-up alarm on the rear of the machine, and (3) it lacked proper warning signs. The Diehls sought to introduce evidence that, shortly after the accident, the owner of the machine partially enclosed the rear wheels, installed a back-up alarm on the rear of the machine, and placed warning signs on the rear of the machine. These measures were taken in order to prevent similar accidents in the future. The District Court excluded evidence of these remedial measures under Rule 407. After trial, a jury returned a verdict for Blaw-Knox, and judgment was entered against the Diehls. We hold that Rule 407 does not bar evidence of remedial measures taken by a non-party, and that the evidence offered in this case was relevant and would not tend to confuse or mislead the jury. Because we conclude that the exclusion of this evidence was not harmless error, we will reverse the judgment of the District Court and remand for a new trial.

---

[1]  Ingersoll-Rand Corp., Ingersoll-Rand Co., Cooper Industries, Inc., Funk Manufacturing Co., and Deere & Co. did not participate in this appeal. Claims against these defendants were dismissed prior to trial.

## I.

On May 24, 1999, Timothy Diehl was severely injured while working as a laborer on a road crew for IA Construction, Inc. ("IA"). On the day of the accident, the road crew was using a machine called a "road widener" to extend the shoulder of a road. Manufactured by Blaw-Knox in 1970, the road widener is used to deposit and spread material to one side of the roadway. The road widener is usually followed by laborers who must perform a number of tasks, including removing excess material that is inadvertently left on the paved portion of the roadway; removing stones that become lodged in the material; leveling off the material that has been spread; and straightening the outer edge of the deposited material. The laborers are then followed by a roller to press the material.

On the day of the accident, Mr. Diehl was working as one of the laborers behind the road widener. The road widener had come to a stop, and then began to move in reverse. Mr. Diehl, who was working within "a couple of feet" of the road widener, was not aware that the machine was reversing toward him. One of the exposed wheels struck Mr. Diehl's right ankle, trapping and crushing his lower leg.

The Diehls' theory of the case was that the road widener was defective in design for three reasons: (1) it lacked a bumper or any other enclosure of the rear wheels; (2) the back-up alarm was inaudible, particularly because it was

placed on the front of the machine; and (3) it lacked proper warnings. The Diehls sought to introduce testimony by an IA mechanic that, shortly after the accident, the mechanic modified the road widener by (1) installing a rear bumper/guard that enclosed the rear tires; (2) relocating the back-up alarm to the rear of the machine; and (3) placing warning signs on the rear of the machine (the "IA redesign"). According to the mechanic's testimony, the IA redesign was done in response to the accident and for the purpose of preventing similar accidents. Significantly, IA is not a party to this lawsuit.

Blaw-Knox filed a motion in limine prior to trial to prohibit the Diehls from introducing evidence of the IA redesign. The Diehls filed their own motion in limine seeking an order allowing them to introduce evidence of the IA redesign at trial. The District Court granted Blaw-Knox's motion and denied the Diehls' motion, ruling that the IA redesign was a subsequent remedial measure inadmissible under Fed. R. Evid. 407.

At trial, the Diehls asked the District Court to reconsider its exclusion of the IA redesign, arguing that Rule 407 does not apply to subsequent remedial measures taken by a non-party. The District Court again refused to admit the IA redesign, ruling that "Rule 407 by its terms is not limited to remedial measures taken by the defendant." Alternatively, the District Court excluded the evidence under Fed. R. Evid. 403, finding that evidence of remedial measures taken in 1999 would confuse the jury, whose focus was temporally limited to whether the product was safe in 1970.

The jury returned a verdict for Blaw-Knox using a verdict form given by the District Court. The jury answered "No" to question 1, "Was the [road widener] defective in design when manufactured and sold by the defendant Blaw-Knox?" Finding no defect, the jury did not consider the remaining issues in the case.

The Diehls filed a timely appeal, challenging numerous pre-trial and trial rulings by the District Court, including the court's decision to exclude evidence of the IA redesign. We have jurisdiction under 28 U.S.C. § 1291.[2] We exercise plenary review over the District Court's interpretation of the rules of evidence; however, assuming that the evidence could be admissible in some circumstances, we review the District Court's decision to exclude that evidence for abuse of discretion. *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 412 (3d Cir. 2002).

## II.

The primary issue in this case is whether Fed. R. Evid. 407 excludes evidence of subsequent remedial measures

---

[2] The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

3

taken by a non-party such as IA. Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if c o n t r o v e r t e d , o r impeachment.

"Rule 407 rests on the strong public policy of encouraging manufacturers to 'make improvements for greater safety.'" *Stecyk*, 295 F.3d at 415 (quoting *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1276 (3d Cir. 1992); *see also* Fed. R. Evid. 407 advisory committee's note ("The other, and more impressive, ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety."). The Rule recognizes that manufacturers will be discouraged from improving the safety of their products if such changes can be introduced as evidence that their previous designs were defective. *Stecyk*, 295 F.3d at 415.

This policy is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit. The admission of remedial measures by a non-party necessarily will not expose that non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place. It is noteworthy that each of the circuits to address this issue has concluded that Rule 407 does not apply to subsequent remedial measures taken by a non-party. *E.g.*, *Mehojah v. Drummond*, 56 F.3d 1213, 1215 (10th Cir. 1995); *TLT-Babcock, Inc. v. Emerson Elec. Co.*, 33 F.3d 397, 400 (4th Cir. 1994); *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523-24 (1st Cir. 1991); *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 888 (9th Cir. 1991); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 583 (5th Cir. 1985); *Lolie v. Ohio Brass Co.*, 502 F.2d 741, 744 (7th Cir. 1974) (per curiam). *See generally* 2 Weinstein's Federal Evidence § 407.05[2] (Joseph M. McLaughlin ed., 2d ed. 2003).

The able District Judge declined to follow these authorities, observing that the text of Rule 407 makes no exception for subsequent remedial measures taken by a non-party. This is true enough, but the Advisory Committee's notes to Rule 407 state that the rule "incorporates conventional doctrine which excludes

4

evidence of subsequent remedial measures as proof of an admission of fault." *See also Rimkus v. N.W. Colo. Ski Corp.*, 706 F.2d 1060, 1064 (10th Cir. 1983) (stating that Rule 407 "codified the generally accepted common law rule"). Prior to the enactment of Rule 407, conventional doctrine in this circuit was that the rule excluding evidence of repairs made after an accident was not applicable to repairs made by a non-party. *See Steele v. Wiedemann Mach. Co.*, 280 F.2d 380, 382 (3d Cir. 1960). The Advisory Committee's reference to "an admission of fault" reinforces this limitation: it hardly makes sense to speak of a party's fault being "admitted" by someone other than the party. Furthermore, the Advisory Committee was well aware of the courts' consistent interpretation of the rule. The notes to the 1997 amendment of Rule 407—making the rule applicable to products liability actions—cite with approval the First Circuit's opinion in *Raymond v. Raymond Corp.* The court in *Raymond* expressly ruled that "there is no rationale for excluding third party subsequent repairs under the Rule." 938 F.2d at 1524.

Because Rule 407 does not apply to evidence of subsequent remedial measures taken by a non-party, it was error for the District Court to exclude evidence of the IA redesign under that rule.

### III.

The District Court alternatively excluded evidence of the IA redesign under Fed. R. Evid. 403, which states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." A district court's explicit balancing analysis under Rule 403 should only be disturbed if it is irrational or arbitrary. *Ansell*, 347 F.3d at 525.

The court reasoned that the IA redesign would create a danger of unfair prejudice, confusion of the issues, and misleading of the jury, because "[t]he issue of a defect—as to whether or not there's a defect, requires a focus of the jury on the time of the manufacture of this machine in 1970, more than 30 years ago." Under Pennsylvania law, a product is defective if it "'left the supplier's control *lacking any element necessary to make it safe for its intended use*." *Lewis v. Coffing Hoist Div., Duff-Norton Co.*, 528 A.2d 590, 593 (Pa. 1987) (quoting *Azzarello v. Black Bros. Co.*, 391 A.2d 1020, 1027 (Pa. 1978) (emphasis added)); *accord Duchess v. Langston Corp.*, 769 A.2d 1131, 1142 (Pa. 2001) ("[O]ur jurisprudence requires that products are to be evaluated at the time of distribution when examining a claim of product defect."). "Since the employment of a subsequent remedial measure by definition occurs in a different time frame, the evidence is said to be of diminished relevance." *Duchess*, 769 A.2d at 1140. Still, the implementation of remedial measures to improve the safety of a product is consistent with an inference that the older product of a similar design was defective. *Petree v. Victor Fluid Power,*

*Inc. ("Petree I")*, 831 F.2d 1191, 1198 (3d Cir. 1987); *see also Duchess*, 769 A.2d at 1142 (stating that, under Pennsylvania law, post-sale design changes are "not directly relevant, but, at best, can provide an inference concerning the product's earlier condition" which "would generally satisfy the standard of relevancy.").[3]

---

[3] We are concerned that the District Court erroneously discounted the relevance of the IA redesign. Citing *Duchess*, 769 A.2d at 1145, the District Court stated in a related pre-trial ruling: "As the Supreme Court of Pennsylvania recently stated, 'design improvements made after the sale of the product are not relevant to the issue presented in a products liability case, which is whether the product was safe when sold." The passage quoted by the District Court, however, appears to have been taken out of context. The quote is actually from an earlier Pennsylvania Superior Court case, *Connelly v. Roper Corp.*, 590 A.2d 11, 13 (Pa. Super. 1991). *Duchess* in fact departed from *Connelly*: "*Connelly* . . . relied upon a conclusion that design changes are irrelevant in a products liability case, whereas our holding embodies a different assessment of relevance and consideration of pertinent public policy." *Duchess*, 769 A.2d at 1145. As discussed above, *Duchess* explicitly acknowledged that subsequent design changes are capable of an inference of defect.

We are also concerned that the

As a general matter, we appreciate the potential that subsequent design changes represent for distracting juries from the issue at hand—whether the product was defective when it left the manufacturer's hands. *Kelly*, 970 F.2d at 1277-78 ("[Rule 407] operates on the presumption that undue prejudice is likely in certain situations, expressing a distrust of a jury's ability to draw the proper inferences from the evidence." (internal citation omitted)), *quoted in Stecyk*, 295 F.3d at 415. As the Fifth Circuit put it in

---

District Court placed too much reliance on Pennsylvania Rule 407, and decisions of the Pennsylvania courts applying that rule. Certainly, Pennsylvania products liability law is critical in determining whether particular evidence is relevant. Fed. R. Evid. 401 (defining relevance by reference to facts "of consequence to the determination of the action"). However, Federal Rule 407's assessment of the dangers of unfair prejudice and confusion of the issues are *procedural* matters that govern in a federal court notwithstanding a state policy to the contrary. *Kelly*, 970 F.2d at 1277-78. Regardless, we observe that Pennsylvania Rule 407 is expressly limited to remedial measures taken by parties to the case: "evidence of the subsequent measures is not admissible *to prove that the party who took the measures* . . . produced, sold, designed, or manufactured a product with a defect or a need for a warning or instruction." (Emphasis added).

6

*Grenada Steel Industries, Inc. v. Alabama Oxygen Co.*:

> A priori judgments concerning why manufacturers do or do not alter their products, made by such dubious experts as judges, lawyers, and law professors, suffer from excessive reliance on logical deduction and surmise without the benefit of evidence of industry practice or economic factors. It seems to us, with no greater expertise than like-trained lawyers and judges, that changes in design or in manufacturing process might be made after an accident for a number of different reasons: simply to avoid another injury, as a sort of admission of error, because a better way has been discovered, or to implement an idea or plan conceived before the accident.

695 F.2d 883, 887-88 (5th Cir. 1983); *cf. Duchess*, 769 A.2d at 1140 (citing *Grenada Steel* and stating that "manufacturers may modify product design for many reasons other than to remedy a defect"). *Grenada Steel* is particularly instructive because that case also involved subsequent remedial measures taken by a non-party. Although the court in that case recognized that Rule 407 is inapplicable to non-party remedial measures, the evidence nevertheless implicated Rule 403 concerns:

> [W]e think the district court's exclusion of this evidence was proper because it lacked sufficient probative value and injected the dangers of confusion and misleading the jury. . . . Alternative designs may indicate that the product was unreasonably dangerous, but only if they were available at the time of manufacture. We fail to see how an alternative design, developed by another person years after the product in question was manufactured, is relevant to whether the product was reasonably safe at the time it was made.

*Grenada Steel*, 695 F.2d at 889 (internal citations omitted).

The instant case, however, presents none of the risks discussed in *Grenada Steel*, or in other cases analyzing the potential for confusion in products liability cases. For one, the state of the art is not an issue in this case, *i.e.*, it is undisputed that the measures taken by IA—merely welding a bumper onto the rear of the road widener—were available to Blaw-Knox at the time of the manufacture. Accordingly,

7

there is no temporal distinction for the jury to overlook between a feature reasonably necessary to make the road widener safe in 1999, and a feature reasonably necessary to make the road widener safe in 1970. *See generally Espeaignnette v. Gene Tierney Co., Inc.*, 43 F.3d 1, 7 (1st Cir. 1994) (holding that evidence of subsequent remedial measures taken by a non-party was not misleading or unfairly prejudicial on the issue of defect where evidence would not have introduced design choices not known or feasible at the time of manufacture).

Furthermore, we find no dispute in the record that the IA redesign was done in direct response to Mr. Diehl's accident and for the sole purpose of preventing such accidents. The IA mechanic that performed the redesign testified in deposition that the redesign was done to prevent the accident that befell Mr. Diehl. Because the purpose of the redesign was not contested, there was no danger that the jury would discount other plausible reasons for the redesign.

Despite the deference accorded to a trial court's Rule 403 balancing, we find no support in the record for the District Court's concerns that the IA redesign would confuse or mislead the jury.[4]

Because the evidence is probative of whether the road widener lacked a feature reasonably necessary to make the machine safe for its intended use, and because its relevance was not outweighed by other dangers, we find that the District Court abused its discretion by excluding evidence of the IA redesign.

IV.

Finally, we are unable to conclude that the District Court's error was harmless. A District Court's evidentiary rulings can be affirmed if, notwithstanding the error, we conclude that it is "highly probable" that the error did not prejudice the appellant's substantive rights. *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 927-28 (3d Cir. 1985). Several aspects of the record in this case convince us that admission of the IA redesign could have affected the jury's decision on the issue of defect.

First and foremost, the sole issue decided by the jury was the road widener's defectiveness, and evidence of the IA redesign creates a permissible inference that the machine was defective. As it was, the evidence presented on defect came down to the Diehls' expert, Dr. Ketchman, versus Blaw-Knox's expert, Dr. Barnett. Dr. Barnett testified at length that the Diehls' proposed alternative design was

---

[4] Although we cannot discern any potential for confusion on the record before us, we also note that a limiting instruction was neither suggested by the parties nor considered by the court. *See Petree v. Victor Fluid Power, Inc.*, 887

F.2d 34, 41 (3d Cir. 1989) (allowing subsequent remedial measures evidence where tendency towards unfair prejudice could be alleviated by a limiting instruction).

not any safer than Blaw-Knox's 1970 design of the road widener. Evidence that the owner of the road widener had, in fact, redesigned the machine in the manner suggested by plaintiffs and for the very purpose of making the road widener safer (indeed, to prevent the very accident that is the subject of the lawsuit), tends to rebut Dr. Barnett's testimony. Moreover, it does so with greater effectiveness than the theoretical testimony of the Diehl's expert. *Cf. Espeaignnette*, 43 F.3d at 6-7 (evidence of subsequent remedial measures by a non-party more effective to prove feasibility than "hypothetical assertions" of plaintiff's expert). Finally, we observe that Blaw-Knox attempted to discredit Dr. Ketchman in part based on his lack of experience with road wideners. *E.g.*, App. at 685 (closing argument of counsel for Blaw-Knox) ("How good of an expert are you? Do you really know—have you rode construction equipment, Dr. Ketchman? No, he doesn't."). Evidence of the redesign performed by IA Construction, which is arguably more familiar with the equipment than either of the experts, may have substantially buttressed Dr. Ketchman's testimony. *Cf. Borden, Inc. v. Florida East Coast Ry. Co.*, 772 F.2d 750, 756 (11th Cir. 1985) ("[A] litigant is unduly prejudiced when his opponent is successful in preventing the admission of evidence on a particularly crucial issue in dispute, and then points to the absence of such evidence in closing argument.").

We therefore cannot say that it is highly probable that evidence of the IA redesign would not have affected the jury's conclusion that the 1970 design lacked a feature reasonably necessary to make the machine safe for its intended use.[5] Because we conclude that the

---

[5] Because we find that the exclusion of the IA redesign constitutes reversible error, we will not address each and every issue raised by the Diehls on appeal. However, we will address two matters that are likely to arise on remand. First, we conclude that the Diehls' request for an "enhanced injury," or "crashworthiness" instruction is meritless. Second, the District Court should reconsider its exclusion of evidence that Blaw-Knox itself had redesigned the road widener to fully enclose the rear tires. The Diehls argue that the Blaw-Knox redesign should have been admitted to show feasibility, an exception to Rule 407. The Blaw-Knox redesign, however, should not have been characterized as a subsequent remedial measure in the first place (a characterization the Diehls did not challenge). The Blaw-Knox redesign was done in 1983, 13 years after manufacture of the road widener and 16 years prior to the accident. Amended in 1997, Rule 407, by its terms, applies to remedial measures taken "after an injury or harm allegedly caused by an event." Fed. R. Evid. 407; *see also* Advisory Committee's notes to the 1997 amendment ("Evidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not

exclusion of this evidence was not harmless error, we will reverse the judgment of the District Court and remand for a new trial.

---

fall within the exclusionary scope of Rule 407 even if they occurred after the manufacture or design of the product."). The 1997 amendment abrogated decisions of this Circuit to the contrary. *See Kelly*, 970 F.2d at 1277; *Petree I*, 831 F.2d at 1198. Because the Blaw-Knox redesign was done in 1983, 16 years prior to the accident, Rule 407 does not apply. Evidence of the Blaw-Knox redesign, of course, must still be analyzed under Rules 401 and 403.