**June EMERSON, Appellant,**

v.

**The GARVIN GROUP, LLC, Respondent.**

**No. ED 98536.**

Missouri Court of Appeals, Eastern District, Division One.

April 23, 2013.

---

1. Five appeals were scheduled for one hearing date: 12–07888, 12–07890, 12–07891, 12–07893, and 12–07897.

Gary A. Growe, Teneil L. Kellerman, Saint Louis, MO, for Appellant.

Amy M. Surber, Maryland Heights, MO, for Respondent.

## *OPINION*

### GLENN A. NORTON, J.

June Emerson appeals the judgment entered upon the jury verdict finding The Garvin Group, LLC ("Garvin") twenty percent liable in Emerson's negligence action and assessing total damages at $15,000. This appeal raises the issue of first impression of whether evidence of subsequent remedial measures taken by a non-party is admissible in a negligence action. We reverse and remand.

## I.  BACKGROUND

Emerson performed electrical assembly work at Raven Industries ("Raven"), an electronics manufacturing plant. In order to keep plant floors compliant with static control issues, Raven contracted with Garvin to strip, wax, and buffer designated areas of the plant floor. On the night at issue, Garvin began the process of treating a designated area of the plant floor near the area where Emerson was stationed. Emerson left her work station to get additional parts and fell on the portion of the floor being treated by Garvin. Garvin had not marked the area with warning signs, cones, or tape.[1] Emerson sustained injuries to her wrist as a result of the fall and filed the underlying negligence action against Garvin.

The cause proceeded to trial where Emerson sought to introduce evidence that, subsequent to her fall, Raven directed Garvin to begin marking the designated areas of the floor to be treated with cau-

---

1.  Garvin relied on a mop bucket as a warning that the floor was slippery.

tion signs or tape. The trial court excluded the evidence as a subsequent remedial measure, and the jury returned a verdict finding the total amount of Emerson's damages to be $15,000 and assessing the percentage of fault at twenty percent to Garvin and eighty percent to Emerson. The trial court entered judgment on the verdict in favor of Emerson in the amount of $3,000. Emerson appeals.

## II. DISCUSSION

### A. Subsequent Remedial Measure Directed by Raven

■ In Emerson's first point on appeal, she claims the trial court erred in excluding evidence that, subsequent to her accident, Raven directed Garvin to mark the designated areas of the floor being treated with caution signs or tape. We agree.

■ A trial court's ruling on the admission or exclusion of evidence is reviewed for an abuse of discretion. *Teasdale & Associates v. Richmond Heights Church of God in Christ*, 373 S.W.3d 17, 21 (Mo.App. E.D.2012). However, the issue of whether the trial court applied the correct legal standard is a question of law that we review de novo. *Kesler–Ferguson v. Hy–Vee, Inc.*, 271 S.W.3d 556, 558 (Mo. banc 2008).[2]

■ Generally, evidence of subsequent remedial measures is inadmissible in negligence actions to prove negligence or culpable conduct in connection with the event. *Rader Family Ltd. Partnership, L.L.L.P. v. City of Columbia*, 307 S.W.3d 243, 247–48 (Mo.App. W.D.2010). However, the rule does not require the evidence to be excluded when it is used for other purposes such as impeachment or, if controverted, as proof of ownership, control, or feasibility of precautionary measures. *Id.* at 248. The principal reason for the prohibition lies in the public policy favoring safety improvements and the fear that if safety improvements could be used as evidence of previous improper conditions, no one, after an accident, would make improvements. *Cupp v. National R.R. Passenger Corp.*, 138 S.W.3d 766, 776 (Mo. App. E.D.2004). Emerson acknowledges the general prohibition on the admission of subsequent remedial measures, but argues that the public policy behind the rule is not implicated where the evidence concerns remedial measures taken by a non-party to the case. Because evidence of remedial measures taken by a non-party cannot expose that party to liability, Emerson argues that the non-party will not be deterred from implementing the remedial measure, and therefore the prohibition should be limited to the exclusion of evidence relating to remedial measures taken by the *defendant*. Emerson's argument raises an issue of first impression in Missouri.

Federal Courts have agreed with Emerson's position when interpreting an analogous evidentiary rule, Federal Rule of Evidence 407.[3] Each United States Federal

2. The dissent is correct that neither party advocates a de novo standard of review, and we do not disagree that the correct standard of review is for an abuse of discretion. However, in determining whether the trial court abused its discretion, it remains a question of law whether the trial court applied the correct legal standard in excluding the evidence.

3. Federal Rule of Evidence 407 (2012) provides: "When measures are taken that would

have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Previous versions of Rule 407 have been cited to with approval by Mis-

Circuit Court of Appeals to address this issue has concluded that Rule 407 does not apply to subsequent remedial measures taken by a non-party.[4] In *Dielh*, the Third Circuit Court of Appeals, after explaining that Rule 407[5] rests on the public policy of wanting to encourage improvements to safety, recognized that the "policy is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit." 360 F.3d at 429–30. "The admission of remedial measures by a non-party necessarily will not expose that non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place." *Id.* at 430. Accordingly, the Court held that Rule 407 does not apply to evidence of subsequent remedial measures taken by a non-party. *Id.*

■ "While the Federal Rules of Evidence are not binding on Missouri courts, they are suggestive." *Boyer v. City of Potosi,* 77 S.W.3d 62, 69 (Mo.App. E.D. 2002). Missouri Courts, similar to the Court in *Diehl*, have focused on the public policy implications when analyzing whether the rule relating to subsequent remedial measures should apply to particular instances. It has been stated that "[b]ecause public policy favors remedial measures, evidence that, after an accident has occurred, a *defendant* took precautions to prevent a reoccurrence of the accident, or made changes or repairs in the property or place causing the accident, is not competent evidence to be used against the defendant to show antecedent negligence or an admission of negligence." *Cupp,* 138 S.W.3d at 776 (emphasis added).

In *Pollard,* this Court decided, for the first time, whether the rule regarding the admissibility of subsequent remedial measures applies to strict liability cases in Missouri. 793 S.W.2d at 401. Focusing on the public policy behind the rule, the Court noted that "[i]t is manifestly unrealistic to suggest that the producer will forego making improvements in its product, and risk innumerable additional lawsuits and the attendant adverse effects upon its public image, simply because evidence of such improvement may be admitted in an action founded on strict liability for recovery on an injury that preceded the improvement." *Id.* at 402 (internal quotation omitted).[6]

souri Courts. *See Pollard v. Ashby,* 793 S.W.2d 394, 401 (Mo.App. E.D. en banc 1990); *Stinson v. E.I. DuPont De Nemours and Co.,* 904 S.W.2d 428, 432 (Mo.App. W.D. 1995); *Hewitt v. Empiregas, Inc. of Sikeston,* 831 S.W.2d 744, 747 (Mo.App. S.D.1992).

4. *See, e.g., Millennium Partners, L.P. v. Colmar Storage, LLC,* 494 F.3d 1293, 1303 (11th Cir. 2007); *Diehl v. Blaw–Knox,* 360 F.3d 426, 430 (3rd Cir.2004); *Mehojah v. Drummond,* 56 F.3d 1213, 1215 (10th Cir.1995); *TLT–Babcock, Inc. v. Emerson Elec. Co.,* 33 F.3d 397, 400 (4th Cir.1994); *Raymond v. Raymond Corp.,* 938 F.2d 1518, 1524 (1st Cir.1991); *Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880, 888 (9th Cir.1991); *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990); *Dixon v. International Harvester Co.,* 754 F.2d 573, 583 (5th Cir.1985); *Lolie v. Ohio Brass Co.,* 502 F.2d 741, 744 (7th Cir.1974) (per curiam).

5. The *Diehl* Court analyzed a previous version of Rule 407. *Diehl,* 360 F.3d at 429. The version analyzed in *Diehl* is substantially similar to the current version of Rule 407 and was amended for stylistic reasons only, with no intent to change any result in any ruling on evidence admissibility. *See* Advisory Committee Notes to Federal Rule of Evidence 407 (2012).

6. We acknowledge that *Pollard* split from federal authority prohibiting evidence of subsequent remedial measures in strict liability cases. *Pollard,* 793 S.W.2d at 402 n. 12. However, the split in *Pollard* from the federal practice was only the result of a difference of opinion in whether the public policy rationale applies in strict liability cases. *See Id.* at 402

Accordingly, the Court determined that the public policy rationale does not apply in strict liability cases and held the evidence was admissible. *Id.* 402–03.

In *Rader Family*, the Western District Court of Appeals was faced with the issue of whether the rule regarding the admissibility of subsequent remedial measures should apply to inverse condemnation or nuisance cases. 307 S.W.3d at 248. The Court repeated the public policy behind the rule and found that it applied, perhaps even more so than in negligence actions, stating, "[i]f plaintiffs were allowed to introduce evidence of subsequent remedial measures to prove a prior nuisance by an entity with the power of eminent domain, this could deter these entities from implementing preventative measures protecting the public." *Id.* Consequently, the Court held that the trial court did not err in applying the rule against the admission of subsequent remedial measures. *Id.*

In *Boggs ex rel. Boggs v. Lay*, this Court explained that the "public-policy rationale for excluding evidence of post-accident remedial measures does not apply . . . if the measures in question were planned, pro-vided for, or undertaken prior to the accident." 164 S.W.3d 4, 21 (Mo.App. E.D. 2005). Therefore, the Court determined that a defendant who is aware of a problem and has proposed remedial measures prior to an accident is not entitled to the protection of the exclusionary rule, and it was not error to admit evidence regarding remedial measures proposed and implemented prior to the plaintiff's injury. *Id.* at 22.

■■ The analysis in *Pollard, Rader Family,* and *Boggs* focused on whether the public policy rationale applied when considering whether the exclusionary rule relating to subsequent remedial measures was applicable. Consistent with this approach, we follow *Diehl* and hold that the exclusionary rule barring evidence of subsequent remedial measures does not apply when the measure was implemented by a non-party.[7] Because evidence of remedial measures taken by a non-party necessarily will not expose that party to liability, that party will not be discouraged from taking the remedial measure and the public policy in favor of safety improvements will be satisfied.[8]

(noting that the public policy concern behind the rule has been subject to criticism when applied to strict liability cases); *but cf. Cann v. Ford Motor Co.,* 658 F.2d 54, 59–60 (2nd Cir.1981) (recognizing a split of authority on the issue but finding that the public policy behind the rule applies equally in strict liability actions as it does in negligence actions).

7. Our independent research reveals that a number of state courts, including our neighboring states of Iowa and Arkansas, have found that subsequent remedial measures implemented by non-parties may be admissible. *See Stevens v. Novartis Pharmaceuticals Corp.,* 358 Mont. 474, 247 P.3d 244, 266 (2010); *Couch v. Astec Industries, Inc.,* 132 N.M. 631, 53 P.3d 398, 404 (App.2002); *Ford Motor Co. v. Nuckolls,* 320 Ark. 15, 894 S.W.2d 897, 901 (1995); *Bingham v. Marshall & Huschart Machinery Co., Inc.,* 485 N.W.2d 78, 81 (Iowa

1992); *Blaw–Knox Const. Equipment Co. v. Morris,* 88 Md.App. 655, 596 A.2d 679, 681 (1991); *Magnante v. Pettibone–Wood Manufacturing Co.,* 183 Cal.App.3d 764, 228 Cal. Rptr. 420, 423 (1986); *Hadley v. Trio Tool Co.,* 143 Mich.App. 319, 372 N.W.2d 537, 540 (1985).

8. We acknowledge that Missouri Appellate Courts, as a second reason for prohibiting evidence of subsequent remedial measures, often note that subsequent remedial changes are irrelevant to establish the previous condition of the area. *See, e.g., Cupp,* 138 S.W.3d at 776. However, although evidence of subsequent remedial measures may not be relevant to establish the previous condition of the area, the evidence remains probative to the issue of whether the defendant's prior conduct constituted culpable negligence. *See Rader Family,* 307 S.W.3d at 248 (noting that

■ Here, the trial court excluded evidence that, following Emerson's injury, Raven, a nonparty to the action, implemented a policy requiring the use of caution signs or tape to mark off the designated area of the plant floor being treated. Because this remedial measure was implemented by a non-party, the rule prohibiting evidence of subsequent remedial measures does not apply, and the trial court abused its discretion in excluding the evidence.[9] Point one is granted.

## B. Additur

In Emerson's second point on appeal, she argues that the trial court erred in denying her motion for additur. Emerson contends that the verdict assessing her total damages at $15,000 was against the weight of the evidence and shockingly inadequate where the undisputed evidence showed that she sustained at least $41,198.44 in medical bills and $3,900 in lost wages.

Our disposition of Emerson's first point on appeal requires remanding the cause for a new trial where the jury can consider additional evidence relevant to the determination of fault. "[I]n a comparative fault case, the issues of fault and damages are blended and interwoven, and it would be a rare case in which a jury would not consider the effect of its determination of percentages of fault in terms of the damages to be eventually awarded to the plaintiff." *Secrist v. Treadstone, LLC,* 356 S.W.3d 276, 285 (Mo.App. W.D.2011). Accordingly, in light of our opinion granting relief on Emerson's first point on appeal, we need not address her second point on appeal because the cause must be remanded for a new trial on the issues of fault and damages. *See id.*

## III. CONCLUSION

We reverse the trial court's judgment and the cause is remanded for further proceedings in accordance with this opinion.

CLIFFORD H. AHRENS, P.J., dissents.

SHERRI B. SULLIVAN, J., concurs.

CLIFFORD H. AHRENS, Presiding Judge.

I respectfully dissent. In my view, on these facts and in the absence of any rule of law to the contrary, the trial court did not err or abuse its discretion in following well-established precedent barring evidence of subsequent remedial measures. I would affirm the trial court's judgment.

As a preliminary matter, I question the majority's application of our *de novo* standard of review to create a new rule of evidence where neither party requests *de novo* review. Appellant expressly invokes our review for an abuse of discretion, which is the proper standard for evidentiary rulings. If the trial court's ruling is correct on any tenable basis, then there is

evidence of subsequent preventative measures could be probative of whether the prior operation was reasonable); *Hewitt,* 831 S.W.2d at 748 (explaining that evidence of subsequent remedial measures, although generally inadmissible, is relevant to establish that the conduct in question constituted culpable negligence).

9. Garvin alternatively argues that the evidence was properly excluded because the prejudicial effect of the evidence greatly outweighed its probative value. Evidence is not legally relevant, and should be excluded, if the danger of unfair prejudice outweighs the probative value of the evidence. *Kroeger–Eberhart v. Eberhart,* 254 S.W.3d 38, 43 (Mo. App. E.D.2007). Garvin claims that the evidence would have been prejudicial because it would have amounted to an admission of fault. However, Emerson's offer of proof clearly showed that the policy requiring Garvin to use caution signs or tape was directed by Raven. Therefore, the risk that the jury would view the evidence as an admission of fault by Garvin was minimal.

no abuse of discretion. *Lewey v. Farmer,* 362 S.W.3d 429, 432–433 (Mo.App.2012). Applying that standard, the trial court cannot be faulted for following existing law.

Even accepting the majority's premise that Appellant's point invites *cie novo* review as to whether the trial court applied the correct legal standard, the facts of this case do not warrant an exception to the general rule that evidence of subsequent remedial measures is inadmissible. The majority opinion reasons that the public policy rationale for this rule "is not implicated where the evidence concerns remedial measures taken by a non-party." However, in the federal cases on which the majority relies, the remedial measure was actually *taken by* the non-party. Here, in contrast, the remedial measure was taken by the defendant himself at the behest of the non-party. Raven directed Garvin to use caution tape in the future as a requirement of his work there. Such evidence, and the inference to be drawn therefrom, is arguably even more prejudicial to Garvin than if he had corrected his practice voluntarily. As such, the public policy rationale supporting the general rule is equally compelling here.

Seeing no legal error or abuse of discretion in the trial court's evidentiary ruling, I would deny Appellant's point and affirm the judgment.[1]

---

1. Although the majority does not reach point II in which Appellant challenges the size of her award, I would deny that point as well. The determination of damages to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the credibility of witnesses and the weight and value to be given their testimony on factual issues is principally the jury's decision. *Lewey,* 362 S.W.3d at 435. The trial court has wide discretion in ruling on a motion for a new trial for inadequate damages, and the court abuses that discretion only when the jury verdict is so "shockingly inadequate as to indicate that it is a result of passion and prejudice or a gross abuse of its [the jury's] discretion." *Id.* Notwithstanding Appellant's disappointment and speculation, the record contains no indication of passion or prejudice, so I would defer to the jury's determination and the trial court's broad discretion.