

# In the Missouri Court of Appeals
# Eastern District
### DIVISION THREE

| | | |
|---|---|---|
| PATRICIA WATSON, | ) | No. ED107780 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Honorable Daniel G. Pelikan |
| CITY OF ST. PETERS, | ) | |
| | ) | |
| Respondent. | ) | Filed: February 11, 2020 |

The plaintiff, Patricia Watson, appeals the judgment entered by the Circuit Court of St. Charles County following a jury verdict in favor of the defendant, the City of St. Peters. Watson suffered injuries when the front wheel of her bicycle went into a storm water sump inlet that extended into the sidewalk where she was riding.

The trial court abused its discretion in excluding as subsequent remedial measures the evidence that, before Watson's injury, the City had taken measures to provide for, plan, and implement a citywide program to address the sump inlet conditions involved in Watson's accident. The public-policy rationale for post-accident remedial measures does not apply when the City was first alerted to the possible danger and took precautions to remediate the danger prior to Watson's accident. As a result, the general rule prohibiting subsequent remedial measures does not apply. In addition, exclusion of evidence of the City's program prejudiced Watson, materially affecting the merits of her case by hindering her ability to prove the City's

knowledge of the condition. Therefore, we reverse the trial court's judgment, and remand for a new trial.

Factual and Procedural Background

Watson was riding her bicycle westbound on the sidewalk along the north side of Ohmes Road in the City of St. Peters on the morning of August 28, 2014. She testified at trial that she had never before ridden her bicycle along that particular stretch of sidewalk. Watson crested a hill five hundred feet from a sump inlet designed to funnel storm water from the street into the storm sewer at the bottom of the hill. As she traveled down the hill on her bicycle, Watson saw "something bizarre in the middle of the sidewalk." The sump inlet extended into the sidewalk from the street, creating an opening in the sidewalk six inches deep and about two-and-one-half feet long. This opening consumed about two feet, or one-third, of the sidewalk's width, thus narrowing the traversable portion of the sidewalk. In addition, the edge of the sidewalk at the back of the sump inlet had partially crumbled away, exposing the rebar inside the concrete,

Steven Brown, an assistant fire marshal with Central County Fire and Rescue, was on duty that morning as he drove westbound on Ohmes Road, past Watson. Brown saw the sump inlet jutting into the sidewalk. Concerned that Watson might not see the opening in the sidewalk, Brown checked his rearview mirror. He saw Watson's front bicycle wheel go into the sump, and saw her flip head-first onto the sidewalk. Watson suffered multiple facial fractures, and was rendered unconscious. Brown rendered aid to Watson until an ambulance arrived. He prepared a written statement for police and for his employer about the accident in which he wrote that he "noticed a storm sewer intake that was built into the sidewalk and the intake opening extended extremely into the path of the sidewalk." Brown continued that he "immediately became concerned and hoped the bicyclist seen [sic] the hazard." While at the emergency room, City

2

police took a brief statement from Watson, which included the following: "I ride my bike that way every day and haven't had any problems before."

Watson sued the City of St. Peters for negligence, alleging that the sump inlet was an unreasonably dangerous condition that was not open and obvious, and she sought damages to compensate for her injuries. William Benesek, the City's group manager for transportation and development services, testified that the traversable portion of the sidewalk in question was four feet wide, and that it was constructed in compliance with the requirements of the City, St. Charles County, the Missouri Department of Transportation, and the federal Americans With Disabilities Act. At trial, Watson sought to introduce evidence of a 2012 bicycle accident involving a sump inlet in the sidewalk at a different location within the City, and the City's resulting program to retrofit, or bridge, all of its sump inlets to make sidewalks safer throughout the City. Benesek testified via an offer of proof that the 2012 accident involved a "very deep" sump inlet that, because of its placement to accommodate existing utilities at that particular location, was "much deeper than the typical two-foot inlet sump that you would see." He stated that the Ohmes Road sump inlet in question here was "pretty typical." Benesek further explained that the City began retrofitting its sump inlets in another area of the City after it learned of the 2012 bicycle accident. The City planned to retrofit all the sump inlets citywide. In the meantime, the City did not erect warning signs or paint the curbs a contrasting color around its sump inlets that extended into the adjacent sidewalk. The City had not yet scheduled the sump inlets on Ohmes Road for retrofitting at the time of Watson's accident, but shifted its immediate retrofitting efforts to Ohmes Road thereafter.

The trial court excluded evidence of the 2012 bicycle accident as well as evidence of the City's sump-inlet retrofitting and sidewalk-improvement program. The trial court admitted

3

Brown's written statement, but redacted references to the sewer inlet extending "extremely" into the sidewalk and constituting a "hazard." The trial court admitted the prior inconsistent statement Watson made to police while in the emergency room that she rode her bicycle "that way every day."

The jury found Watson to be one hundred percent at fault, and returned a verdict in favor of the City. The trial court entered judgment according to the verdict, and denied Watson's motion for new trial. Watson appeals.

Discussion

In four points on appeal, Watson claims the trial court erred in making four evidentiary rulings, namely: (1) excluding evidence that the City had notice of a problem with its storm water sump inlets extending into the adjacent sidewalk and had taken steps to make the design safer before Watson's accident; (2) excluding evidence of a similar bicycle accident in 2012 involving one of the City's sump inlets at a different location; (3) admitting statements Watson made to police while she was in the emergency room immediately following the accident, which contradicted her trial testimony; and (4) excluding certain portions of Brown's written statement which described the storm sewer inlet as extending "extremely" into the sidewalk and creating a "hazard."

<em>Standard of Review</em>

We note that Watson has appealed the trial court's order denying her motion for new trial. The trial court's order denying a motion for new trial is not appealable. *Burbridge v. Union Pacific R.R. Co.*, 413 S.W.3d 649, 654 (Mo. App. E.D. 2013). While Watson may not appeal the order denying her motion for new trial, we will treat her appeal as one from the trial court's judgment, and will review it as such. *Id.*

Watson challenges four of the trial court's evidentiary rulings. We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Emerson v. Garvin Group, LLC*, 399 S.W.3d 42, 44 (Mo. App. E.D. 2013). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009). When reasonable persons can differ about the propriety of the trial court's action, we cannot say that the trial court abused its discretion. *Id*. The appellant bears the burden of showing not only that the trial court abused its discretion, but also that the abuse of discretion prejudiced her. *Id*. To obtain reversal based on the exclusion of evidence, the appellant must demonstrate that the excluded evidence would have materially affected the merits of her case. *Reed v. The Kansas City Missouri Sch. Dist.*, 504 S.W.3d 235, 244 (Mo. App. W.D. 2016); *Byers v. Cheng*, 238 S.W.3d 717, 726 (Mo. App. E.D. 2007).

*Exclusion of Evidence of Remedial Measures*

In her first point on appeal, Watson claims the trial court erred in excluding evidence that, before Watson fell, the City had notice of a problem with storm sewer sump inlets extending into the sidewalks and had taken steps to make all the sidewalks safer citywide. The City counters that such evidence constituted evidence of subsequent remedial measures that the trial court correctly excluded.

Generally, in negligence actions, a trial court should exclude evidence of subsequent remedial measures. *Boggs ex rel. Boggs v. Lay*, 164 S.W.3d 4, 21 (Mo. App. E.D. 2005). Evidence of subsequent remedial measures to show negligence is prohibited for two reasons. *Id*. First, no one would make improvements after an accident if the precautions taken could be used

5

as evidence that previous conditions were not reasonably safe. *Id*. Second, changes after an accident are irrelevant to establish the condition that existed at the time of the accident. *Id.* Because public policy favors remedial measures, evidence that a defendant took precautions after an accident to prevent a reoccurrence of the accident, or made changes or repairs to the property or place causing the accident, is not competent evidence to be used against the defendant to show previous negligence or an admission of negligence. *Id*.

Missouri Courts have focused on the public-policy implications when analyzing whether the rule relating to subsequent remedial measures should apply in a particular instance. *Emerson*, 399 S.W.3d at 45. The public-policy rationale for excluding evidence of post-accident remedial measures does not apply, however, when the measures in question were planned, provided for, or undertaken before the accident. *Boggs*, 164 S.W.3d at 21. The purpose of the exclusionary rule is to protect a defendant who was first alerted to possible danger after an accident, and was induced by the accident to undertake repairs to prevent further injury. *Id.* However, a defendant who was aware of the problem and proposed measures for remediation prior to the accident at issue is not entitled to the same protection. *Id.*

Here, the evidence indicates the City was aware of the citywide issue with sump inlets extending into the adjacent sidewalk. Benesek testified via an offer of proof, confirming that the City planned to address all the sump inlets after the City was first alerted to the issue in 2012.

> Q. Okay. Would you agree with me because of that fall [in 2012 on Spencer Road] you and your street department wanted to improve the sidewalk system, correct?
> A. That's correct. We were given that responsibility.
> Q. Okay. And that was because of the Spencer Road incident, correct?
> A. That was the purpose of that road program, yes.
> Q. Okay. *Would you agree you and the City wanted to see what you could do to mitigate these situations, like that fall on Spencer Road, and make the sidewalk system safer?*
> *A. Yes.*
> *Q. And, again, this was prior to Ms. Watson's fall, correct?*

6

*A. Yes, sir.*

Q. Okay. Would you agree that prior to August 28th, 2014, there was an ongoing project to address sump inlets in the City of St. Peters?

A. So we were given that task that year to look at what we could do to improve our sidewalk system and improve that situation. So there wasn't a set method to do that. There wasn't a set product that we could purchase, and so we were looking -- I was working with my street department to develop solutions.

Q. Okay. After the fall on Spencer Road you looked to improve the entire sidewalk system, right?

A. Yes.

Q. Okay. And that was citywide, correct, sir?

A. Yes.

\* \* \*

Q. Okay. *When you started that project, was your plan to retrofit all of those in the City?*

*A. Yes.*

(Emphases added). The City acknowledges in its brief that "[t]he [2012] Spencer Road incident did in fact spark Mr. Benesek's department to develop a program to examine sewer inlets in the City and develop a sewer cover modification methodology . . . ."

Beyond developing a program to examine its sump inlets that extended into the adjacent sidewalk, the City proposed measures to bridge the sump inlets in remediation to the 2012 Spencer Road accident by retrofitting all sump inlets citywide, according to Benesek. That the 2012 accident and the City's first retrofitting efforts began at locations other than Ohmes Road is not dispositive. Rather, the more important factor is the foreseeability that sump inlets extending into the adjacent sidewalk posed a risk of injury, and that before Watson's accident, the City researched, planned, and undertook implementing a citywide program to retrofit all sump inlets in the City in order to prevent that risk. The fact that the City expedited the retrofitting of its sump inlets on Ohmes Road after Watson's accident, as part of its existing program to retrofit all sump inlets in the City, does not render its citywide program or the work on Ohmes Road inadmissible evidence of subsequent remedial measures. *See Cupp v. Nat'l R.R. Passenger*

*Corp.*, 138 S.W.3d 766, 776-77 (Mo. App. E.D. 2004)(stating that, in context of case, again reporting conditions in post-accident documents or again suggesting safety measures after accident does not make them inadmissible subsequent remedial measures). This is not a situation where the City was first alerted to the possibility of danger after Watson's accident, and then was induced to take precautions and make improvements, thus entitling the City to the protection of the rule excluding subsequent remedial measures.

An appellant cannot demonstrate error in the exclusion of evidence, however, unless she also shows prejudice. *Byers*, 238 S.W.3d at 726. We review for prejudice, not mere error, and we will reverse only if the error was so prejudicial that it deprived the appellant of a fair trial. *Secrist v. Treadstone, LLC*, 356 S.W.3d 276, 280 (Mo. App. W.D. 2011). Error is prejudicial when a reasonable probability exists that the trial court's error affected the outcome of the trial. *Id*. To obtain a reversal based on the exclusion of evidence, the appellant must show that the excluded evidence would have materially affected the merits of her case. *Williams*, 281 S.W.3d at 872. The materiality and probative value of the evidence must be sufficiently clear, and the risk of confusion and prejudice so minimal, that we can say that it was an abuse of discretion for the trial court to exclude it. *Id*.

In assessing the materiality and probative value of the evidence, we consider whether the excluded evidence tends to prove or disprove Watson's claim of negligence. *See Byers*, 238 S.W.3d at 728 (holding that exclusion of evidence concerning competence of non-party, non-witness pathologist who examined a slide from plaintiff's subsequent non-party treating physician did not materially affect merits of plaintiff's action because it did not tend to prove or disprove whether plaintiff's original treating physician was negligent). Here, the excluded evidence was clearly material and probative. The evidence tended to prove an essential element

of Watson's case, namely that the City had knowledge of the condition in time to remedy it before Watson suffered injury. The excluded evidence was not cumulative to other evidence on the same point, and the evidence presented no risk of confusion for the jury or prejudice to the City.

We find that a reasonable probability exists that this error prejudiced Watson. Although it is impossible to assess precisely what impact the excluded evidence had on the outcome of the trial, exclusion of evidence establishing the City's knowledge of the alleged dangerous condition prior to Watson's accident certainly hindered her ability to prove this element of her case.

To establish the City's negligence, Watson had to prove that: (1) a dangerous condition existed on the premises that was not reasonably safe; (2) the City knew of the condition, or through the use of ordinary care should have known of it in time to remedy or warn of it; (3) the City failed to use ordinary care to remedy, or warn of the dangerous condition; and (4) as a direct result of such failure, Watson suffered damage. Mo. Approved Jury Instr. (Civil) 31.16 (7th ed., Supp. 2018). Here, the excluded evidence of the City's sump inlet retrofit and sidewalk safety program tends to prove that the City had knowledge that a dangerous condition existed with the sump inlets that was not reasonably safe. Because the City's knowledge of the condition constitutes an essential element of Watson's cause of action, exclusion of evidence concerning the City's program that tended to prove the City's knowledge materially affected the merits of the case. Further, the jury was left to consider the parties' comparative fault when it knew that Watson had seen "something" on the sidewalk, but did not know that when Watson was injured, the City already had efforts underway to retrofit its sump inlets to mediate the risk that Watson encountered. Evidence of the City's sump inlet retrofitting program should have been presented to the jury so that it could have a more complete picture in determining liability.

9

A defendant who is aware of a problem and already has proposed remedial measures before an accident occurs is not entitled to the protection of the exclusionary rule. *Emerson*, 399 S.W.3d at 46 (citing *Boggs*, 164 S.W.3d at 21). The public-policy rationale for excluding evidence of post-accident remedial measures does not apply in this case when the City's measures to improve all sump inlets and the adjacent sidewalks citywide were planned, provided for, and implementation begun before Watson's accident. *Boggs*, 164 S.W.3d at 21. Further, that the City began implementation of remedial measures to improve its sidewalks at every location where the sump inlet extended into the adjacent sidewalk speaks directly to whether the City had knowledge of the condition, an essential element of Watson's cause of action.

Therefore, we hold that the trial court abused its discretion in excluding evidence of the City's program to improve all sump inlets and the adjacent sidewalks citywide, which program existed before Watson's accident. We grant Watson's first point, and reverse and remand for a new trial.

Our disposition of Point I resolves Watson's appeal. Nonetheless, we consider Watson's remaining points because these issues are likely to arise on retrial.

*Exclusion of Evidence of Similar Accident*

In her second point, Watson claims the trial court erred in excluding evidence of a similar bicycle accident that occurred in 2012 involving one of the City's sump inlets at a different location. Watson contends that the 2012 accident was sufficiently similar to place the City on notice that the incursion of sump inlets into its sidewalks presented a dangerous condition. The City maintains that the trial court properly excluded the evidence of the 2012 bicycle accident because that accident was not sufficiently similar to Watson's accident to be relevant and

probative on the issue of notice. Specifically, the City argues that the 2012 accident involved a sump inlet of a significantly different design at a remote location.

Evidence of prior occurrences similar to the one in which the plaintiff suffered injury may be admissible to establish notice to the defendant of the existence of a dangerous condition. *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 446 (Mo. banc 1998). A trial court may admit evidence of prior accidents when the evidence shows an accident of like character occurred under substantially the same circumstances and resulted from the same cause. *Govreau v. Nu-Way Concrete Forms, Inc.*, 73 S.W.3d 737, 742 (Mo. App. E.D. 2002). The degree of similarity between accidents is less demanding, however, when the evidence is offered to show notice to the defendant of prior similar accidents than when the evidence is offered to show that the same accident occurred on the occasion at issue. *Emery*, 976 S.W.2d at 446.

The parties have argued the similarity, or lack of similarity, of the 2012 accident to Watson's accident. Evidence of the 2012 accident, however, is more relevant and probative on the issue of the City's notice of a dangerous condition than to show how Watson's accident occurred. Further, admission of evidence of the 2012 accident is inextricably intertwined with the City's program to remediate the dangerous condition created by sump inlets in the sidewalks, evidence of which we have already held should have been admitted. Benesek's testimony established that the 2012 accident led the City to undertake its program to improve all sump inlets and the adjacent sidewalks citywide.

> Q. Okay. Would you agree with me because of that fall [in 2012 on Spencer Road] you and your street department wanted to improve the sidewalk system, correct?
> A. That's correct. We were given that responsibility.
> Q. Okay. And that was because of the Spencer Road incident, correct?
> A. That was the purpose of that road program, yes.
> Q. Okay. Would you agree you and the City wanted to see what you could do to mitigate these situations, like that fall on Spencer Road, and make the sidewalk system safer?

11

A. Yes.

Evidence of the 2012 accident cannot be used to show how Watson's particular accident occurred. Rather, the evidence is relevant to demonstrate the City's notice of the problem, and the procedures the City implemented, or could have implemented, to remediate the problem, which we have discussed in Point I above. On remand, the trial court can reconsider evidence of the 2012 accident for the purpose of admitting the evidence to establish the City's notice of the dangerous condition.

*Admission of Prior Inconsistent Statement*

In Point III, Watson claims the trial court erred in admitting the statement she made to police while in the emergency room. Watson's statement to police conflicted with her trial testimony with regard to whether she had ridden along that particular stretch of sidewalk on Ohmes Road before her accident. Watson contends that her emergency-room statement was unreliable because of her injuries and the pain medication she received.

This claim of error is not preserved for review because Watson failed to object at trial to the court's admission of her prior inconsistent statement. To properly preserve a challenge to the admission of evidence, a party must make a specific objection to the evidence at the time its admission is sought. *Reed*, 504 S.W.3d at 246. By failing to object to the introduction of her statements made to police in the emergency room, Watson failed to preserve this claim for appeal, and we will not consider it. *Id*. Watson's failure to object to the admission at trial of her statements to police is fatal to her Point III, absent plain error review. *Id*. "Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). However, we rarely review for plain error in civil cases, and an

12

appellant may not invoke plain-error review to cure the mere failure to make proper and timely objections. *Reed*, 504 S.W.3d at 246. We decline to exercise our discretion to review Watson's claim for plain error, and so deny her third point.

*Exclusion of Portions of Brown's Written Statement*

In her final point, Watson claims the trial court erred in excluding certain portions of Brown's written statement about the accident which described the storm sewer inlet as extending "extremely" into the sidewalk and constituting a "hazard." Watson contends that the words "extremely" and "hazard" were merely Brown's descriptions of what he observed, and were not inadmissible lay opinions.

An appellant cannot demonstrate error in the exclusion of evidence unless she also shows prejudice. *Byers*, 238 S.W.3d at 726. To obtain reversal based on the exclusion of evidence, the appellant must demonstrate that the excluded evidence would have materially affected the merits of her case. *Reed*, 504 S.W.3d at 244. Even assuming, *arguendo*, that the trial court abused its discretion in excluding the words "extremely" and "hazard" from Brown's written statement, Watson fails to show prejudice.

Brown testified as follows:

Q. Okay. And what did you see as you were headed west down Ohmes Road that morning?
A. Well, I had come to a complete stop at the four-way stop at Ohmes Road and -- I forget the cross street -- but then continued on going west down the hill. As I was proceeding west on Ohmes Road, I noticed there was a lady on a bicycle enjoying the beautiful -- the day, and she was coasting down the hill.
After I passed her, I noticed that there was an opening in the sidewalk where a storm sewer inlet jutted into the sidewalk, and when I saw that I thought oh, man, I hope she sees that when she approaches. And after I passed it, I looked in my rearview mirror and witnessed the bicyclist's tire go into the storm sewer, flipped head first and she landed -- hit head first into the concrete sidewalk.

Brown's testimony described in detail his observations of the sump inlet and the circumstances surrounding Watson's accident. In addition, numerous photographs depicting the configuration and condition of the Ohmes Road sump inlet and sidewalk were admitted into evidence as exhibits. As a result, we fail to see how including the words "extremely" and "hazard" in Brown's written statement would have materially affected the merits of Watson's case. We deny Watson's fourth point.

Conclusion

The trial court abused its discretion in excluding as subsequent remedial measures evidence that, before Watson's injury, the City had taken measures to provide for, plan, and implement a citywide program to address the sump inlet conditions involved in Watson's accident. The public-policy rationale for post-accident remedial measures does not apply when the City was first alerted to the possible danger and took precautions to remediate the danger prior to Watson's accident. As a result, the general rule prohibiting subsequent remedial measures does not apply. In addition, exclusion of evidence of the City's program prejudiced Watson, materially affecting the merits of her case by hindering her ability to prove the City's knowledge of the condition. Therefore, we reverse the trial court's judgment, and remand for a new trial.

_____
Angela T. Quigless, Judge

Mary K. Hoff, P.J. and
Sherri B. Sullivan, J., concur.